12 B.R. 647 (1981)
In the Matter of CLAWSON MEDICAL, REHABILITATION AND PAIN CARE CENTER, P.C., a Michigan professional corporation, Debtor.
Alexander G. ANDREWS, Trustee, Plaintiff/Appellee,
v.
BLUE CROSS AND BLUE SHIELD OF MICHIGAN and Richard Schwieker, Secretary of the Department of Health and Human Services, Defendants/Appellants.
Civ. A. No. 81-71349.
United States District Court, E.D. Michigan, S.D.
July 9, 1981.
*648 Irving A. August, August, Thompson, Sherr, Clarke, Schafer & Shefman, Birmingham, Mich., Gilbert M. Frimet, Frimet, Bellamy & Gilchrist, Southfield, Mich., for debtor.
Sheldon S. Toll, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for plaintiff/appellee.
*649 Karl Overman, Asst. U.S. Atty., Detroit, Mich., for defendants/appellants.

MEMORANDUM OPINION AND ORDER
JOINER, District Judge.
Before the court is a bankruptcy appeal brought by the United States Government growing out of the bankruptcy court's grant of a preliminary injunction in favor of the trustee for Clawson Medical, Rehabilitation and Pain Care Center, P.C. ["Clawson Medical" or the "Center"], and against Blue Cross/Blue Shield ["BCBS"], and the Secretary of Health and Human Services. Since these parties have litigated in several different forums and since the relationship between the parties is important to an understanding of this matter, the procedural history of this case and the roles and relationships of and between the parties will be set forth at the outset. Following this, the issues on appeal will be analyzed.

I. THE PARTIES
Clawson Medical is a federally approved out-patient physical therapy clinic under the Health Insurance for the Aged Act [the "Act"], commonly referred to as the Medicare Act. 42 U.S.C. § 1395 et seq. As such, the Center may perform physical therapy services for beneficiaries under the Act and then submit a claim for reimbursement for those services to the Department of Health and Human Services ["HHS"]. BCBS has been designated by the Secretary of HHS as the fiscal intermediary and carrier under the Act for the state of Michigan and, therefore, BCBS is responsible for processing claims submitted for reimbursement by various providers, including Clawson Medical. 42 U.S.C. §§ 1395h(a) and 1395u(a) (1)(A).
Although BCBS is a named defendant, it is nothing more than a servicing conduit through which money is paid by the Secretary of Health and Human Services to the plaintiff Center for physical therapy services rendered to patients. The Secretary of Health and Human Services is the real defendant in this case and it is the action of that department that is being challenged. Nothing in the record suggests that BCBS has done any act other than for and on behalf of and acting for the Secretary defendant.
Clawson Medical provides physical therapy services to numerous nursing homes throughout the metropolitan Detroit area. A vast percentage of the patients serviced by the Center are Medicare beneficiaries and, therefore, Clawson is dependent upon the Medicare reimbursement for its revenue.
The present scheme for reimbursement to a provider uses an interim rate of reimbursement which is paid to the provider on a per service (modality) basis; there is an annual audit designed to make adjustments for over or under payments. 42 U.S.C. § 1395g. The determination of the interim rate is left to the discretion of the Secretary, and the Secretary has broad power to promulgate regulations to arrive at and to control the interim rate. 42 U.S.C. §§ 1395g and 1395hh. The interim rate is an important figure because to the degree that it coincides with the actual amount of reimbursement determined by the annual audit to be due the provider it is fair to both the provider and the government. The interim rate then is an estimate of the allowable costs per each treatment (or modality) that is performed by a provider; the object is to have the payments "approximate the actual costs as nearly as is practicable so that the retroactive adjustment based on actual costs will be as small as possible." 42 C.F.R. § 405.454(b). However, in the case where the provider has filed for reorganization in bankruptcy, the Secretary is directed to make payments in such amounts to insure that no overpayment is made. 42 C.F.R. § 405.454(c).
The amount of money a provider actually receives per treatment is a function not only of the interim rate but is also a function of the number of claims that BCBS ultimately decides is compensable. Accordingly, the rejection rate plays a large role in *650 the total amount of money received by a provider.
To the extent that a provider's interim rate is set too low or to the extent that a number of its claims for reimbursement are improperly rejected, the provider stands to suffer economic hardship. In seeking injunctive relief from the bankruptcy court, the trustee attacked both the level of the interim rate set by BCBS and the percentage of the Center's claims that were rejected by BCBS; in addition, the trustee found fault with the manner in which BCBS reached and implemented its decisions on these two matters.
Clawson Medical is now a Debtor, having filed a petition for reorganization on October 7, 1980. Alexander Andrews was appointed trustee by the bankruptcy judge and, as noted above, the parties are before this court on an appeal by the United States from a grant of the bankruptcy court of a preliminary injunction in favor of the trustee.

II. HISTORY OF THE CASE
Underlying this dispute is the trustee's (and prior to the bankruptcy filing, the Center's) dissatisfaction with two things: (1) the interim modality rate assigned by BCBS to Clawson Medical, and (2) the rate of rejection experienced by Clawson Medical concerning its claims for reimbursement.
On October 16, 1979, Clawson Medical filed a civil action (No. 79-73983) in district court, seeking a temporary restraining order and a preliminary injunction against BCBS. The Center found fault with the claims review and reimbursement procedures adopted by BCBS. The Center asserted that a new review system for evaluating reimbursement claims had been implemented by BCBS without notice and that the new system resulted in a greater percentage of their claims being rejected. The Center's attack on the new review procedure alleged, among other things, that the action by BCBS violated the due process clause of the Fifth Amendment.
Judge DeMascio denied the Center's request for a temporary restraining order, and the motion for a preliminary injunction was set down for oral argument. The motion for a preliminary injunction was denied on December 19, 1979. Sometime after the denial of the motion, BCBS reduced the applicable modality rate for Clawson Medical from $17.90 to $4.70. As a result of this action, on September 26, 1980, the Center filed another motion for injunctive relief based on its allegation that BCBS improperly reduced Clawson Medical's applicable modality rate and that this change was effected without any notice, hearing or explanation. On October 7, 1980, before Judge DeMascio ruled on the new motion, the case was removed to bankruptcy court when the Center filed a petition for reorganization under Chapter 11. On October 8, 1980, the trustee filed a motion for a temporary restraining order before the bankruptcy judge. It is this motion which gives rise to the present appeal.
The bankruptcy judge heard oral argument on the motion on November 20, 1980 concerning the Center's request to increase the modality rate to $17.00. At the conclusion of the hearing of November 20, 1980, the bankruptcy judge ruled from the bench that he was granting the trustee's requested relief of an interim rate of $17.00 per modality. On December 18, 1980, the bankruptcy judge entered an order which required BCBS to pay $17.00 per modality on claims for reimbursement submitted by the Center and which forbade BCBS from rejecting more than 42% of the Center's claims.
On that same date, the government filed a notice of appeal with the district court and also sought a stay from the bankruptcy judge; the bankruptcy judge denied the stay. The government then petitioned the district court for a stay of the injunction pending appeal. Since the appellate judge had not yet been designated, the motion for a stay was assigned to the presiding judge *651 and the motion was assigned a miscellaneous number, 80-810. Judge Gilmore, acting in his capacity as presiding judge, granted the government's request for a stay of the bankruptcy court's order, without prejudice. This order was entered on December 24, 1980. On February 8, 1981, the bankruptcy judge issued a written opinion concerning his November 20, 1980 grant of the preliminary injunction. Subsequent to the filing of that opinion, the trustee petitioned Judge Gilmore to lift his stay. On April 13, 1981, Judge Gilmore denied the trustee's motion to lift the stay, holding that the bankruptcy judge's opinion did not comply with the requirements of Rules 52(a) and 65(d) concerning the finding of facts necessary to support an injunction.
Ultimately, the government's appeal of the bankruptcy court's order was assigned to this court, briefs were submitted by both parties and oral argument was heard. The government's appeal is now ripe for a decision by this reviewing court.

III. ANALYSIS OF ISSUES
The government raises two significant issues. The first issue involves a basic inquiry into the scope and breadth of the jurisdiction of the bankruptcy court; the second issue challenges the sufficiency of proof to support the grant of the injunctive relief.
As to the first issue, the government asserts that the bankruptcy court did not have the jurisdictional basis to order the injunction against the defendant concerning the interim modality rates and the rejection rate of the Center's claims. Contained in this argument is the government's basic assertion that the bankruptcy court entered into the impermissible domain of judicial rate setting. The essence of the government's argument is that the adoption of the new Bankruptcy Act does not permit the bankruptcy court to short circuit the normal procedural requirements of federal law relating to the method of establishing claims against the government. In the opinion below, the bankruptcy judge held that 28 U.S.C. § 1471, the general grant of jurisdiction to the bankruptcy court, permitted the bankruptcy court to pass final judgment on the debtor's claims against the Secretary of Health and Human Services without the need to follow the pre-established, statutorily mandated procedural guidelines which the debtor would have been required to follow had there not been a filing under Chapter 11. The government argues that by operation of 42 U.S.C. § 1395ii, which incorporates § 205(h) of the Social Security Act, 42 U.S.C. § 405(h), into the Health Insurance for the Aged Act, Congress intended that courts, including the bankruptcy court, be precluded from intervening in the fact finding responsibilities of the Secretary. Section 405(h) provides:
The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
Section 405(h) requires that review of the Secretary's decision must be done according to the provisions of the Act. Accordingly, since this provision has been made a part of the Health Insurance for the Aged Act, the government argues that the plaintiff should have been required to take the procedural steps required by the Health Insurance for the Aged Act to challenge the Secretary's decision. The government asserts that the plaintiff has failed to follow the required procedural steps and that as a result the bankruptcy judge is without power to act. See Califano v. Sanders, 430 U.S. 99, 103 n. 3, 97 S.Ct. 980, 983 n. 3, 51 L.Ed.2d 192 (1977); Mathews v. Diaz, 426 U.S. 67, 76, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976); Mathews v. Eldridge, 424 U.S. 319, 328-29, *652 96 S.Ct. 893, 899-900, 47 L.Ed.2d 18 (1976); Weinberger v. Salfi, 422 U.S. 749, 766, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975). Moreover, the government asserts that the blanket prohibition against any review of a decision of the Secretary by any person, tribunal, or governmental agency applies to the bankruptcy court. It asserts this as contrary to the bankruptcy judge's opinion which interprets the jurisdictional grant under the Bankruptcy Reform Act, 28 U.S.C. § 1471, as conferring upon the bankruptcy court jurisdiction to issue the injunction over the defendants notwithstanding the prohibitory language of § 405(h) and notwithstanding the exhaustion requirement of the Act. Section 1471 of Title 28 of the United States Code provides:
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.
(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.
(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.
It is the position of the bankruptcy court and the appellee that the prohibitions and limitations of § 405(h) do not apply to the bankruptcy court. The opinion of the bankruptcy court determined that the absence of § 1471 from the exclusionary language of the last sentence of § 405(h) indicates that review by the bankruptcy court is appropriate. The court similarly found that the exhaustion requirement is inapplicable. For this proposition the court relies on the first clause of § 1471(b), "Notwithstanding any act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts...." The bankruptcy court's position is that this language supersedes the exhaustion requirement.
In addition, the appellee argues that since the bankruptcy court has exclusive jurisdiction over all property of the debtor by operation of § 1471(e) and since the Center's rights to be reimbursed for its claim submitted to BCBS are property of the estate by operation of 11 U.S.C. § 541(a), the bankruptcy court has jurisdiction over this matter.
Neither the jurisdictional bases relied upon by the bankruptcy court nor the additional arguments asserted by the appellee urging the existence of jurisdiction in this matter convinces this reviewing court that the bankruptcy court had jurisdiction to grant the injunctive relief now under scrutiny. The bankruptcy court does not have any greater jurisdiction to invade and ignore the congressionally established procedures to challenge the decisions of the Secretary than does the district court. Congress' broad grant of jurisdiction was not intended to confer upon the bankruptcy court unlimited boundaries upon its jurisdiction to be constrained only by the selfimposed and nonreviewable restraint of abstention, as the bankruptcy court's opinion would suggest. No tortured construction of § 1471 shall be permitted to catapult the bankruptcy court's jurisdiction to review administrative action beyond that granted by Congress to the district court.
*653 The Health Insurance for the Aged Act, 42 U.S.C. § 1395ii, incorporates § 405(h) of the Social Security Act, making the decisions of the Secretary final. The failure to also incorporate § 405(g), providing for judicial review of the Social Security Act, lead the Court of Appeals in Chelsea Community Hospital, SNF v. Michigan Blue Cross Association, 630 F.2d 1131 (6th Cir. 1980), to hold that the Secretary's decisions were reviewable by the district court as a matter of constitutional law. Since the underlying facts in Chelsea were developed, the Health Insurance for the Aged Act was amended to provide judicial review of the Secretary's decision. 42 U.S.C. § 1395oo(f). Thus, as of this time there is a well conceived, defined procedure to test the decisions of the Secretary. Accordingly, the exhaustion requirement of the Act must be satisfied before any court may properly exercise jurisdiction, and inasmuch as exhaustion has not occurred in this case, the bankruptcy court's action was premature.
Congress has the power to establish the method and means of establishing claims against the government. It has done so in this case. This court simply holds that the breadth of the bankruptcy court's grant of jurisdiction does not include the power to shortcut the congressionally established procedures and to interject itself into a dispute before an applicable administrative process has been exhausted, unless that process is shown to be a hollow gesture or a sham where no relief can be had by the petitioning party. Certainly there was not enough in the record before the bankruptcy court and there is not enough in the record before this court to support premature judicial intervention.
The second major argument raised by the government is that the bankruptcy court's grant of a preliminary injunction did not meet the standards required by Rules 52(a) and 65(d) for such a grant. In particular, the government argues that there were insufficient findings to support the preliminary injunction.
As noted in an earlier part of this opinion, this issue was the subject of two separate orders by Judge Gilmore. Judge Gilmore's first order, staying the bankruptcy court's order granting a preliminary injunction, found that the bankruptcy court's order of December 18, 1980 failed to satisfy Rule 65(d) because it failed to adequately state the reasons for its issuance and because it failed to make findings of fact and conclusions of law which demonstrated that the plaintiff had satisfied the requirements for the issuance of a preliminary injunction.
After the bankruptcy judge issued an opinion stating the reasons for granting the injunction, Judge Gilmore, in an order of April 9, 1981, once again found that the standards of Rule 65(d) had not been met. In addition, Judge Gilmore determined that the requirements of Rule 52(a) that the standards for the issuance of a preliminary injunction must be supported by adequate findings of fact had not been met by the bankruptcy judge's opinion. In particular, Judge Gilmore found that the record was not supported on the issue of irreparable injury or likelihood of success on the merits.
Applying Mason County Medical Association v. Knebel, 563 F.2d 256 (6th Cir. 1977), Judge Gilmore's opinion accurately set forth the Sixth Circuit's standards for the issuance of a preliminary injunction:
1. Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;
2. Whether the plaintiff has shown irreparable injury;
3. Whether the issuance of a preliminary injunction would cause substantial harm to others;
4. Whether the public interest would be served by issuing a preliminary injunction.
Applying its own independent analysis, this court finds that the bankruptcy court's opinion fails to meet the requirements of Rules 65(d) and 52(a) pertaining to the issuance of a preliminary injunction. On its *654 findings relative to the likelihood of success on the merits and irreparable harm the bankruptcy court made statements of ultimate fact without any supporting factual bases for making those statements. In order to show the likelihood of success on the merits, a plaintiff must be shown to have a cognizable legal claim. On this issue the bankruptcy court stated: "Whether the claims presented will be upheld is a more difficult question .... It is unclear whether those rights [of the Center's] have been abridged ...." Such a record cannot support the granting of a motion for injunctive relief.
There is not sufficient evidence in the record to support a finding that the interim rate paid by BCBS to Clawson Medical per modality should be resumed at the rate paid prior to September 1, 1980. Nor is there sufficient evidence in the record to support a finding that the rejection rate of modalities performed by employees of the trustee and submitted for reimbursement shall not exceed 42%. And finally, there is no authority in the bankruptcy court to make its order retroactive to October 7, 1980.
Accordingly, for all of the reasons noted in this opinion, the opinion of the bankruptcy court is reversed and the preliminary injunction is set aside.
So ordered.