770 F.2d 137
 Terry L. ARCOREN, Appellant,
v.
FARMERS HOME ADMINISTRATION, John Block, in his capacity as
Secretary of the U.S. Department of Agriculture; Charles
Schuman, in his capacity as Administrator of the Farmers
Home Administration; Dexter Gunderson, in his capacity as
State Director for South Dakota, Farmers Home
Administration, U.S. Department of Agriculture; Eugene
McCue, individually and in his capacity as District
Director, Farmers Home Administration, U.S. Department of
Agriculture; Wenton Peters, individually and in his
capacity as a Supervisor, Farmers Home Administration,
Department of Agriculture and John Schooler, Appellees.
 No. 85-1025.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1985.
Decided Aug. 14, 1985.
 
 Nora K. Kelley, Pierre, S.D., for appellant.
 Robert Mandel, Asst. U.S. Atty., Pierre, S.D., for appellees.
 Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and PHILLIPS,* Senior Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 Terry L. Arcoren appeals the district court's[1] order dismissing his action brought directly under the fifth amendment to the United States Constitution against two Farmers Home Administration (FmHA) officials involved in the repossession and sale of Arcoren's cattle. We reverse and remand for further proceedings.
 
 Background
 
 2
 Between 1976 and 1978, Arcoren borrowed approximately $19,000 from the Farmers Home Administration (FmHA). Purchasing cattle and a truck with the loan proceeds, Arcoren signed an agreement giving FmHA a security interest in his farm equipment, crops, and livestock. In 1979, Arcoren was late with his loan payments but made both his 1979 and his 1980 payments in October of 1979.
 
 
 3
 In 1980, third parties informed Wenton Peters, an FmHA County Supervisor, that they had been caring for Arcoren's cattle and that they were going to turn the cattle into the road if some action were not taken. On a second visit to Peters, these parties further stated they had penned the cattle in a corral for FmHA to repossess. On March 25, 1980 Peters received authorization from his supervisor, FmHA District Director John Schooler, to repossess and sell Arcoren's cattle. Without verifying the third parties' allegations or attempting to notify Arcoren, FmHA repossessed the cattle on March 27 and sold them the next day. Arcoren, who was then current on his loan payments, learned of the sale on approximately April 1 when he received a bill of sale in the mail. The money realized from the sale of the cattle was applied to Arcoren's outstanding FmHA debt. FmHA sent Arcoren a notice of acceleration on April 28, 1980.
 
 
 4
 Arcoren's acceleration notice form stated that Arcoren would be given the "opportunity to have a meeting before this foreclosure takes place." Arcoren pursued unsuccessfully an administrative appeal through three of a possible four levels, and then filed this action in district court complaining of an alleged violation of his due process right to notice and hearing before repossession of his cattle. Arcoren seeks declaratory and injunctive relief, restitution, and damages. The district court dismissed Arcoren's action, reasoning that the FmHA administrative appeals process afforded Arcoren the process he was due, and that the existence of the FmHA appeals process obviated a constitutionally based remedy styled after Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We disagree, and reverse on the ground that the FmHA administrative appeals process does not supplant a Bivens type action under the unique circumstances of this case. Although urged to do so, we decline to pass on other issues not specifically decided by the district court.
 
 Discussion
 
 5
 The district court assumed, for the purposes of its decision on the defendant's motion to dismiss,[2] that Arcoren had a clearly established due process right to notice and hearing before repossession and sale of his cattle.[3] Without deciding the question, we adopt the district court's assumption. We disagree, however, that the FmHA administrative regulations preclude Arcoren from bringing a Bivens action alleging violation of his fifth amendment due process rights.
 
 
 6
 The sole issue decided by the district court was that FmHA administrative regulations preclude petitioner from bringing an action directly under the fifth amendment to the United States Constitution against FmHA officials.[4] See 7 C.F.R. Sec. 1900.53 (1980). In Bivens the Supreme Court held that the fourth amendment to the United States Constitution affords a private cause of action against a federal official for violation of the plaintiff's rights under the amendment. The Court has recognized causes of action under other constitutional amendments in subsequent cases. See Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (eighth amendment); Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (due process clause of the fifth amendment); cf. Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (refusing to recognize a cause of action under the first amendment where a comprehensive legislative scheme provided the federal civil servant plaintiff with a civil remedy). In Carlson, the Court identified two situations in which a Bivens claim could be defeated: first, when the defendants show " 'special factors counselling hesitation in the absence of affirmative action by Congress,' " Carlson, 446 U.S. at 18, 100 S.Ct. at 1471 (citations omitted), and second, when the defendants prove Congress has explicitly declared its intent that the statutory remedy is a substitute for a Bivens remedy and is viewed as "equally effective." Id. at 18-19 & n. 5, 100 S.Ct. at 1471-70 & n. 5. See also Bishop v. Tice, 622 F.2d 349 (8th Cir.1980).
 
 
 7
 The district court reasoned that the very existence of the FmHA administrative appeals procedures constitutes a special factor counselling against a Bivens remedy because the availability of an action brought directly under the constitution would result in the circumvention of the administrative remedial process. See Bishop, 622 F.2d at 357. The special factors consideration, however, does not concern who should decide the merits of the case. As the Supreme Court stated in Bush, the question is rather who should decide whether a new remedy should be provided. See Bush, 462 U.S. at 380, 103 S.Ct. at 2412. We thus first consider whether Congress should be able to prescribe the scope of relief that is made available to an FmHA borrower whose livestock allegedly has been repossessed and sold without notice and verification of abandonment claims. See id.
 
 
 8
 The FmHA regulations involved in this case are not the congressionally created effective damages remedy present in Bush and Bishop. The scheme the district court describes as "a comprehensive administrative appeal process" is administratively rather than congressionally designed, and does not involve a federal employer-employee relationship. The regulation found at 7 C.F.R. Sec. 1900.53 (1980)[5] does not specifically provide authority for the damages remedy sought here. The regulation allows the FmHA borrower, applicant, or grantee to appeal a FmHA decision "directly and adversely affect[ing]" the FmHA borrower, applicant, or grantee. See 7 C.F.R. Sec. 1900.53(a) (1980). The scope of remedies available is vague; the regulation states only that if the initial decision is reversed, the hearing officer will inform the appellant "what action will be taken." See 7 C.F.R. Sec. 1900.53(d)(7)(i) (1980). Although it is possible to interpret, as did the district court, the regulation as conferring authority to award Arcoren damages, such an interpretation is not so clear as to satisfy the defendants' burden of showing special factors counselling hesitation in creating a Bivens action.[6]
 
 
 9
 For similar reasons it is not demonstrated that Congress intended that the FmHA administrative remedy serve as a substitute for a Bivens remedy under the facts in this case. Unlike the codified remedial schemes in Bush and Bishop, we find no indication that Congress intended the administrative process to substitute for, rather than complement, a Bivens remedy under the factual circumstances involved here. Given the vagueness of the remedies possible under 7 C.F.R. Sec. 1900.53 (1980), we do not believe Congress viewed the regulation "equally effective" so as to preclude a Bivens remedy in a case such as Arcoren's.
 
 
 10
 We recognize that under other circumstances the FmHA regulations may indeed foreclose a Bivens action. We do not deal here with a question of default on a note, deferment of payment, or acceleration; in such situations repossession without prior notice may well be within the rights of a secured creditor.[7] The factual allegations of the complaint sound in an unconstitutional conversion; the deprivation purportedly affected Arcoren's entire farming operation. We do not believe that the administrative process was designed to supplant under such circumstances, if true, a private cause of action for an alleged unconstitutional deprivation of one's property. We do not decide that Arcoren had a clearly established due process right to notice and hearing or that Arcoren has proven his case on the merits. This question must be passed upon initially by the district court. We hold only that the FmHA administrative appeals process set forth in 7 C.F.R. Sec. 1900.53 (1980), under the unique circumstances of this case, does not defeat an action brought directly under the fifth amendment to the United States constitution.
 
 
 11
 Accordingly, we reverse and remand for further proceedings.
 
 
 
 *
 The HONORABLE HARRY PHILLIPS, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation. Judge Phillips participated in the oral argument and at conference agreed with the vote of the court. However, due to his untimely death he did not have an opportunity to review the opinion
 
 
 [1]
 The Honorable Donald J. Porter, United States District Court for the District of South Dakota
 
 
 [2]
 The defendants' motion to dismiss also included an alternative motion for summary judgment in favor of defendants. The district court granted the dismissal and did not address the alternative motion. We treat this appeal as an appeal from a dismissal rather than an appeal from a grant of summary judgment
 
 
 [3]
 The FmHA challenges this assumption on appeal. Reasoning that no clearly established right to predeprivation notice existed under these circumstances in March of 1980, the FmHA asserts the defense of qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The district court did not rule on these issues, we therefore need not decide them. We note, however, that our analysis of the viability of Arcoren's Bivens action renders questionable the assertion that the FmHA regulations in contention offered notice and hearing at a meaningful time and in a meaningful manner
 
 
 [4]
 7 C.F.R. Sec. 1900.53 was changed between 1980 and 1985. The district court apparently relied on a later version of the regulation, although the proper inquiry should focus on the administrative scheme as it existed in 1980 when Arcoren's cattle were repossessed. The 1980 version of 7 C.F.R. Sec. 1900.53 reads in relevant part:
 (a) If an applicant for FmHA assistance, and FmHA borrower, or an FmHA grantee is directly and adversely affected by an FmHA decision or action, the official taking such action or making the decision will inform that person or organization by letter of the action taken. The letter will include the following:
 (1) A statement of the action taken or decision made and all of the specific reason(s) for the conclusion reached.
 (2) An invitation to call at the decisionmaking official's office to discuss the decision with that official. The person (or organization) may bring to the meeting any additional information or a representative.
 (3) A statement that the person (or organization) may appeal the decision directly to the hearing officer.
 * * *
 (7) Within 20 calendar days of the hearing, the hearing officer will determine what action to take with regard to the appeal and:
 (i) If the initial decision is reversed, will inform the appellant and original decisionmaking official by letter of the decision, the reason for it, and what action will be taken. Only the State Director or Acting State Director will execute the letter on County Committee decision reversals.
 
 
 [5]
 See supra n. 4
 
 
 [6]
 We note also 7 C.F.R. Sec. 1.51(a)(2) (1980), which authorized the Department of Agriculture to settle claims for money damages against the United States in accordance with the Federal Tort Claims Act. Although we do not decide the question, it can be inferred that the "action" that could have been taken under 7 C.F.R. Sec. 1900.53 (1980) did not include the award of damages, as such a remedy would have been accomplished through the procedures set forth in 7 C.F.R. Sec. 1.51 (1980). The Supreme Court has held specifically that the FTCA does not preclude a Bivens remedy. See Carlson v. Green, 446 U.S. at 19-20, 100 S.Ct. at 1471-72
 
 
 [7]
 Cf. U.C.C. Sec. 9-503, 9-504 (1981)