In the Matter of Douglas F. KENNY, and wife, Marion N. Kenny, Debtors.

Douglas F. KENNY and Marion N. Kenny, Plaintiffs,

v.

John BLOCK, individually and in his capacity as Secretary of the United States Department of Agriculture; Allen Brock, individually and in his capacity as Acting Assistant Administrator for Farmer Programs and former Acting Administrator of the Farmers Home Administration; Charles Shuman, individually and in his capacity as Administrator of the Farmers Home Administration; Calvin Lutz, individually and in his capacity as Acting State Director for Michigan; Charles E. Kelsey, individually and in his capacity as District Director; Rodney L. Plews, individually and in his capacity as County Supervisor; United States Department of Agriculture; and the United States of America, Defendants.

Bankruptcy No. 84–02985–B.
Adv. No. 84–1155–B.

United States Bankruptcy Court, E.D. Michigan, S.D.

June 17, 1987.

Paul B. Newman, Newaygo, Mich., for debtors/plaintiffs.

Karl Overman, Asst. U.S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM

GEORGE BRODY, Chief Judge.

The plaintiffs, Douglas and Marion Kenny, are farmers in Michigan. Over the period of 1978–1981, they received six emergency loans from the Farmers Home Administration (FmHA) of the United States Department of Agriculture (USDA). The total principal amount borrowed was $127,500.00.[1] As part of the loan transactions, the plaintiffs executed promissory notes secured by mortgages on their home and farmland on behalf of the United States/FmHA, and they granted a security interest to the United States/FmHA in their equipment, livestock, supplies and inventory. On August 17, 1984, the plaintiffs filed a voluntary Chapter 11 bankruptcy case. On November 10, 1984, the United States filed a secured claim in the amount of $135,859.00.

On December 5, 1984, the debtors filed a complaint against: Mr. John Block, individually and as Secretary of the USDA; Mr. Allen Brock, individually and as Acting Administrator for Farmer Programs and former Acting Administrator of the FmHA; Mr. Charles Shuman, individually and as Administrator of the FmHA; Mr. Calvin Lutz, individually and as Acting Director of the FmHA for the State of Michigan; Mr. Charles Kelsey, individually and as District Director of the FmHA; Mr. Rodney Plews, individually and as County Supervisor of the FmHA for the County of Sanilac, Michigan, for damages based on various legal theories.

The United States Attorney, representing the individual defendants, filed a motion for summary judgment. In response to the motion, and with leave of the court, the plaintiffs filed an amended complaint, which, *inter alia*, added the United States as a defendant. The amended complaint seeks money damages from the individual defendants and the government for violations of federal statutes, regulations, and the plaintiffs' constitutional rights; breach of contract; and negligence in the performance of a voluntary undertaking to render services, which is popularly known as "good samaritan" liability. In addition, the amended complaint seeks the equitable subordination of the claim of the United States to the claims of all other creditors of the estate. The conduct which the plaintiffs allege entitles them to recover under the theories advanced consists of: failure to promulgate regulations implementing a Congressional enactment, 7 United States Code § 1981a, and making misrepresentations to Congress with regard to the USDA's implementation of the statute; failure to perform regulatory duties to supply credit counseling, planning assistance, record keeping help, borrower supervision and analysis of borrower operations set forth in 7 Code of Federal Regulations Part 1924 Subpart B (1980 and revisions); failure to provide special servicing to the plaintiffs as a delinquent and problem case, including ensuring that FmHA personnel were adequately trained to properly supervise such cases as required by 7 C.F.R. Part 1960 (current 1986 provisions which are similar are found at 7 C.F.R. §§ 1924.-71–.73); adoption of an official policy of "deliberate indifference to the financial needs and plights of borrowers" contrary to Congressional policy; refusal to close an emergency loan in 1982 after such had been approved by the County Committee, and after the plaintiffs had paid for title work that had been completed along with other preliminary paperwork; refusal to restore the plaintiffs' dairy operation in

---

**1.** Loan History

| Date | Amount | Program |
|------|--------|---------|
| 4–10–78 | $81,000.00 | Emergency Loan |
| 4–10–78 | 18,000.00 | Emergency Loan |
| 9–14–79 | 41,000.00 | Emergency Loan |
| 5–22–81 | $5,790.00 | Emergency Loan |
| 5–22–81 | 23,710.00 | Emergency Loan |
| 8–11–81 | 8,000.00 | Emergency Loan |

1983 when it had been foreclosed by another creditor; failure to timely inform the plaintiffs of consolidation, rescheduling, reamortization and deferral relief set forth in FmHA regulations, and subsequent refusal to consider the plaintiffs' request for such relief, despite the recommendation of the County Committee that such relief be granted; denial of operating loans for 1981, 1982 and 1983; failure to adjust the plaintiffs' repayment requirements to reflect reduced level of milk price supports; and, the failure to make emergency loans for the years 1978–1981 sufficiently large to provide the plaintiffs with the operating capital necessary to plant and harvest crops.

The defendants filed a motion to dismiss the amended complaint on the following grounds:

1. There was no personal service on the individual defendants and thus they must be dismissed. F.R.Civ.P. 12(b)(2) & (5).

2. This adversary proceeding is not a core matter.

3. The allegations against the FmHA and the United States, sound in tort and thus must be dismissed because of the debtor's failure to file an administrative claim under Federal Tort Claims Act. 28 U.S.C. 2675(a); *In re Kjeldahl*, 52 B.R. 916, 926 (D.Minn. 1985).

4. The claims against the individual defendants must be dismissed in that such claims are barred by the absolute immunity as to common law torts and qualified immunity as to constitutional torts. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Windsor v. The Tennessean*, 719 F.2d 155, 165 (6th Cir.1983).

5. The United States cannot be sued for damages for violations of the Constitution. *Diminnie v. United States*, 522 F.Supp. 1192, 1197 (E.D.Mich. 1981).

6. The debtors do not establish a cause of action for breach of contract.

7. The debtors fail to establish grounds for equitable subordination.

### Failure to Properly Serve the Individual Defendants

■ Counsel for the individual defendants contends that relief was sought against them in their individual capacities for the first time in the amended complaint, thus the debtors were required to personally serve each individual with a copy of the amended complaint, and since the plaintiffs failed to do so, the actions against the defendants in their individual capacities should be dismissed. This contention lacks merit.

The caption of the original complaint names each of the six government employees as a defendant individually and in his capacity as an office holder with the government. Knowledge that each of the defendants was being sued in both their personal and official capacities is clearly demonstrated by the first paragraph of their answer to the original complaint, which provides as follows:

Now comes the defendants, John Block, Allen Brock, Charles Shuman, Calvin Lutz, Charles Kelsey, and Rodney L. Plews, *both in their official capacities and individually*, through their counsel, United States Attorney Leonard R. Gillman and Assistant United States Attorney Karl Overman and answer the Plaintiff's Complaint as follows: [Emphasis added]

Since the original complaint gave the individual defendants notice that they were being sued both as individuals and as government officials, and since the individual defendants recognized by their answer that they were being sued in both capacities, it was not necessary to serve each of the individual defendants with copies of the amended complaint. *See* Bankruptcy Rule 7005 and Rule 5(b) F.R.Civ.P.; *and cf. Jackson v. Hayakawa*, 682 F.2d 1344, 1348 (9th Cir.1982). Service of the amended complaint upon counsel who represented them was sufficient. *Id.* Accordingly, the motion to dismiss the actions against the

individual defendants in their individual capacities should be denied.

### Lack of Subject Matter Jurisdiction

The government contends that the claims for tort and contract damages are noncore proceedings; that a bankruptcy judge does not have jurisdiction to hear such proceedings; and, therefore, these counts of the complaint must be dismissed. Additionally, the government contends that 28 U.S.C. § 157(b)(5) (Supp. III, 1985) requires that the tort claims be tried in the United States District Court.

■ The plaintiffs concede that the tort and contract damage claims are not core proceedings. However, it does not follow that the bankruptcy court does not have jurisdiction to hear such matters. 28 U.S.C. § 157(c)(1) (Supp. III, 1985) provides that:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.

In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

A proceeding is "otherwise related" to a bankruptcy case "whenever 'the outcome of the proceeding could conceivably have any effect upon the estate being administered in bankruptcy.'" *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986), (quoting *In re General Oil Distributors, Inc.*, 21 B.R. 888, 892 n. 13, (Bankr.N.E.N. Y.1982) citing *Mazur v. U.S. Air Duct Corp. (In re U.S. Air Duct Corp.)*, 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981)). There is

no question but that the resolution of the tort and contract claims will materially affect the bankruptcy estate. Thus, the bankruptcy court may hear these claims subject only to the limitation imposed by 28 U.S.C. § 157(c)(1).

■ Nor is there any merit to the government's contention that 28 U.S.C. § 157(b)(5) requires that the tort claims be tried in the district court. 28 U.S.C. § 157(b)(5) provides that:

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy is pending.

The tort claims asserted in this proceeding are not personal injury or wrongful death claims, and therefore section 157(b)(5) does not come into play.[2] Accordingly, the motion to dismiss for lack of subject matter jurisdiction and the motion to transfer the tort claims to the district court are denied.

### Jurisdiction Over Tort Claims Against the United States

■ The government maintains that the tort actions against it, its departments and agencies, and the individual defendants in their official capacities must be dismissed because the plaintiffs failed to "exhaust their administrative remedies" prior to instituting this adversary proceeding, as required by 28 U.S.C. § 2675(a) of the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671–2680 (1982)). The plaintiffs contend, however, that 11 U.S.C. § 106 (1982) of the Bankruptcy Code permits them to prosecute their tort claim without first requiring them to exhaust their administrative remedies.

---

**2.** *Cf. Central National Bank v. Kwak,* 49 B.R. 337 (N.D.Ohio 1985) (statute not applicable to creditor's bill), and *In re Macon Prestressed Concrete Co.,* 46 B.R. 727 (M.D.Ga.1985) (statute not applicable to claim based on failure of consideration and material misrepresentation, nor to counterclaim for fraudulent and preferential transfers), *with,* product liability cases where

statute applied, *A.H. Robins, Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.) *cert. denied,* — U.S. —, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *White Motor Credit v. Citibank N.A.,* 761 F.2d 270 (6th Cir.1985); *In re Johns-Manville Corp.,* 45 B.R. 823 (S.D.N.Y.1984); *In re Johns-Manville Corp.,* 45 B.R. 827 (S.D.N.Y.1984).

The doctrine of sovereign immunity "renders the United States, its departments, and its employees in the official capacities as agents of the United States immune from suit except as the United States has consented to be sued." *Williamson v. United States Department of Agriculture*, 815 F.2d 368, 373 (5th Cir.1987). Where consent is granted, suits against such entities "can be maintained only, ... in the manner prescribed and subject to the restrictions imposed." *Munro v. United States*, 303 U.S. 36, 41, 58 S.Ct. 421, 423, 82 L.Ed. 633 (1938). 28 U.S.C. § 1346(b) waives the government's sovereign immunity with respect to claims for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 2675(a) provides that no such action shall be instituted "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency...." The plaintiffs admittedly had not presented their tort claims to the FmHA prior to filing this action. However, § 2675(a) also provides that the exhaustion of administrative remedies requirement does not "apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross claim or counterclaim." The United States filed its secured claim in November of 1984. The filing of a proof of claim has been treated as analogous to the filing of the complaint in a civil action. *See Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552 (5th Cir.1985); *Nortex Trading Corp. v. Newfield*, 311 F.2d 163, 164 (2d Cir.1962); 3 *Collier on Bankruptcy*, ¶ 502.01 [3], p. 502–16 (1987). This adversary proceeding, commenced by the plaintiffs after the government filed its claim, although filed as a separate action, in essence sets forth counterclaims against the government. *Braucher v. Continental Illinois National Bank and Trust Company (In re Illinois-California Express, Inc.)*, 50 B.R. 232, 236 (B.R.D.Colo.1985); *In re Codesco, Inc.*, 24 B.R. 746, 9 Bankr.

Ct.Dec. (CRR) 11 (Bankr.S.D.N.Y.1982). However, the "counterclaim" exception of the FTCA is limited to "compulsory" counterclaims, as defined in F.R.Civ.P. 13(a) as a claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." *Spawr v. United States*, 796 F.2d 279, 281 (9th Cir. 1986). Thus, under the FTCA, the plaintiffs would first have had to exhaust their administrative remedies prior to instituting the present action if their tort claims are other than compulsory counterclaims. *Id.*

The parties have not addressed the question as to whether the tort claims are, or are not, compulsory counterclaims, and the court is reluctant to decide this question without input from counsel. However, it is unnecessary to decide this question for the purpose of the motion before the court. The tort claims are either compulsory or permissive counterclaims. Since the FTCA does not require that a claimant exhaust administrative remedies prior to asserting a compulsory counterclaim, it is sufficient for the purpose of this motion to determine whether exhaustion of the administrative procedure specified in 28 U.S.C. § 2675(a) for permissive counterclaims applies in the bankruptcy context. To do so, it is necessary for the court to consider the plaintiffs' contention that 11 U.S.C. § 106 of the Bankruptcy Code, and not § 2675(a) of the FTCA, is applicable in a bankruptcy case; that § 106 does not contain an administrative remedy exhaustion requirement; and, therefore the government's motion to dismiss for failure of the plaintiffs to exhaust their administrative remedies must be denied.

11 U.S.C. § 106, in pertinent part, provides as follows:

### § 106. Waiver of sovereign immunity

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmen-

tal unit any claim against such governmental unit that is property of the estate.

Section 106 was enacted to prevent a governmental unit from receiving "a distribution from the estate without subjecting itself to any liability it has to the estate within the confines of a compulsory counterclaim." H.Rep. No. 595, 95th Cong., 1st Sess. 317 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 29–30 (1978), *reprinted in,* U.S.Code Cong. & Admin.News 1978, pp. 5787, 5814, 5815. Thus, if a governmental unit files a claim, subsection (a) of 11 U.S.C. § 106 waives the governmental unit's sovereign immunity, without limitation as to amount, with respect to compulsory counterclaims as defined in F.R.Civ.P. 13(a). House and Senate Reports, *supra; In re Braniff Airways, Inc.,* 42 B.R. 443 (Bankr.N.D.Tx.1984). In addition, subsection (b) of 11 U.S.C. § 106 permits an estate to offset against the allowed claim of a governmental unit, up to the amount of the governmental unit's claim, any claim that the estate has against the governmental unit without regard to whether the estate's claims arose out of the same transaction or occurrence as the governmental unit's claim. The Bankruptcy Code waiver of sovereign immunity is separate and distinct from the FTCA waiver. Section 106 does not contain an exhaustion of administrative remedy requirement. The exhaustion of administrative remedy requirement of the FTCA is not to be read into Bankruptcy Code §§ 106(a) and (b). The only condition imposed by §§ 106(a) and (b) is that the governmental unit file a claim. The absence of an exhaustion of remedy requirement is consistent with the reason for the adoption of § 106—namely to permit an estate to assert claims against a governmental unit as a condition of such unit's receiving distribution from the estate. Moreover, it is reasonable to assume that if Congress had intended that a plaintiff, prior to instituting a tort action against a governmental unit in a bankruptcy case, exhaust his administrative remedies, it would have expressly so provided.

Since § 106 does not contain an exhaustion of administrative remedy requirement, and since § 2675(a) does not apply to a claim asserted against a governmental unit in a bankruptcy case, the motion to dismiss for failure of the plaintiffs to exhaust their administrative remedies is denied.

The jurisdictional arguments having been disposed of, it is necessary to decide whether the complaint must be dismissed pursuant to F.R.Civ.P. 12(b)(6) for failure to establish grounds for either tort or contract liability. "In determining a motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) the complaint is to be liberally construed; all factual allegations of the complaint are presumed to be true and all reasonable inferences are made in favor of the non-moving party." *Allard v. Smith (Matter of DeLorean Motor Co.),* 56 B.R. 936, 945 (Bankr. E.D.Mich.1986). *See also, Carlson v. Conklin,* 813 F.2d 769, 772 (6th Cir.1987). A complaint is not to be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## Constitutional Claims Against the Individuals and the Government

The plaintiffs assert that the conduct of the defendants deprived the plaintiffs of rights secured to them by the Fifth Amendment of the United States Constitution, for which the individual defendants and the government may be held liable in damages.[3]

Specifically, the complaint states:

That every borrower from the Farmers Home Administration has a protectable interest in his Farmers Home Administration financed property, and his right to said property and the use thereof, and these rights, and the duties of the Defendants are set forth in Statute, Regulation, and the Contract documents and by the Courts of these United States, which define the process due Plaintiffs, and their property rights, and which proce-

---

**3.** The fifth amendment of the United States Constitution provides in pertinent part that: "No person shall ..., ... be deprived of life, liberty, or property, without due process of law."

dures must be followed in order to comply with the due process rights afforded Plaintiffs by the Fifth Amendment to the Constitution of the United States of America.

The plaintiffs may indeed have a statutory entitlement and protected property interest in the continued enjoyment of the encumbered property. *See Johnson v. United States Department of Agriculture,* 734 F.2d 774, 782 (11th Cir.1984) ("A [rural housing] FmHA loan, once made creates a statutory entitlement and a property interest protected by the due process clause of the Fifth Amendment.") There has, however, been no actionable deprivation by the defendants of any protected interest. No prepetition foreclosure or acceleration or other action adverse to the continued enjoyment of the encumbered property is asserted to have been taken by the FmHA or the individual defendants. *Cf. Arcoren v. Farmers Home Administration* 770 F.2d 137 (8th Cir.1985); *Arcoren v. Peters,* 811 F.2d 392 (8th Cir.1987). Nor did not the government or the individual defendants take any action after the filing of the bankruptcy case to deprive the plaintiffs of their use and enjoyment of the property subject to the government's lien. In fact, the government, by virtue of the bankruptcy filing, was and is stayed from taking any action to enforce its lien without court approval. 11 U.S.C. §§ 362(a)(4) and (6). The complaint, therefore, fails to set forth a claim for damages against the government and the individual defendants based upon the deprivation of the plaintiffs' interest in the encumbered property in violation of the due process clause of the fifth amendment.

The additional contention in the previously quoted language of the complaint is more subtle. In essence, the plaintiffs assert that the deferral program of 7 U.S.C. § 1981a (*infra* p. 522), and the "loan servicing" regulations they rely upon (outlined *supra* p. 517 and *infra* note 4) create protected "property" interests; that the defendants failed to promulgate regulations to implement 7 U.S.C. § 1981a; and that the defendants' failure to provide the plaintiffs with the services enumerated in the regulations, such as, for example, the failure to supply credit counseling, planning and other assistance, violated the due process clause of the fifth amendment, and, accordingly, the defendants should be made to respond in damages.

The deferral program of 7 U.S.C. § 1981a does not create a "property" interest. *Carson v. Block,* 790 F.2d 562, 567 (7th Cir.) *cert. denied,* —— U.S. ——, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986). Nor are "property" interests created by the regulations relied upon by the plaintiffs. "[A]n interest is 'property' only if there is an entitlement that stands or falls on the application of rules to facts. 'To the extent a request appeals to discretion rather than to rules, there is no property.' *Scott v. Village of Kewaskum,* 786 F.2d 338, 340 (7th Cir.1986)." *Carson v. Block,* 790 F.2d 562, 566 (11th Cir.1986).

The obligations imposed upon the government by the regulations relied upon by the plaintiffs to determine eligibility for farm program loans and for the processing and servicing of such loans require the officials to whom such tasks are delegated to exercise discretion in making decisions and policy judgments. The plaintiffs essentially allege that the individual defendants abused their discretion in not granting certain loans and in servicing and administering the loans which had been granted to the plaintiffs. Such abuses of discretion, even if established, do not rise to the level of a constitutional violation. As stated in *Bass v. United States Department of Agriculture,* 737 F.2d 1408, 1415 (5th Cir. 1984):

> ... the entire issue in the judicial review of administrative action always is whether the administrative decision was erroneous. *The Constitution is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of the person against whom the administrative decision is made. Mere failure to make the "correct" administrative decision does not rise to the level of a constitutional violation.* [Emphasis added.]

*See also Williamson v. United States Department of Agriculture,* 635 F.Supp. 114, 117 (S.D.Miss.1986), *aff'd,* 815 F.2d 368 (5th Cir.1987); *Arcoren v. Peters,* 811 F.2d at 393–94.

Since the actions complained of do not implicate property interests which are protected by the due process clause of the fifth amendment, it is suggested that the motion to dismiss the action for damages against the government and individuals based upon the violation of the plaintiffs' constitutional rights should be granted.

██ Moreover, even if the individual defendants' conduct violated the plaintiffs' constitutional rights, the damage action does not lie. The defendants are employees of the executive branch of the government. Agents of the executive branch are entitled to qualified immunity from any damage action based on constitutional violations. *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985); *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economu,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Windsor v. The Tennessean,* 719 F.2d 155, 163 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1986). Qualified immunity availability is based upon recognition that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow v. Fitzgerald,* 457 U.S. at 819, 102 S.Ct. at 2739 (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967)). Qualified immunity serves to shield governmental officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. at 816, 102 S.Ct. at 2737. Where available, qualified immunity is "an *immunity from suit* rather than a mere defense to liability."

*Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original). *See also Carlson v. Conklin,* 813 F.2d 769, 770 (6th Cir.1987). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. at 526, 105 S.Ct. at 2816. It was anything but clear that the conduct with which the individual defendants are charged "violated clearly established constitutional rights." Accordingly, it is recommended that the damage claims against the individual defendants based upon constitutional violations be dismissed.

### Damages for Violation of Federal Statute and Regulation

The plaintiffs assert that they are entitled to money damages because the defendants violated 7 U.S.C. § 1981a by failing to promulgate regulations to implement the statute, and by failing to "timely" notify them of the availability of deferral relief under the provisions of the statute.

██ 7 U.S.C. § 1981a (1982) provides as follows:

In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower. The Secretary may permit interest that accrues during the deferral period on any loan deferred under this section to bear no interest during or after such period: *Provided,* That if the security instrument

securing such loan is foreclosed such interest as is included in the purchase price at such foreclosure shall become part of the principal and draw interest from the date of foreclosure at the rate prescribed by law.

7 U.S.C. § 1981a does not require the Secretary of Agriculture to promulgate regulations for its implementation, "rather he may develop the new standards either by regulation or by case-by-case adjudication." *Ramey v. Block*, 738 F.2d 756, 762 (6th Cir.1984). Formal notice to borrowers of the availability of deferral relief under § 1981a is not required. *Id.* Thus, the plaintiffs' claims for damages based upon a failure to promulgate regulations to implement § 1981a, and a failure to "timely" notify them of the availability of deferral relief under § 1981a should be dismissed.

■ The plaintiffs also claim damages for violation of multiple regulations of the

Farmers Home Administration.[4] To determine whether a claim for damages lies for the violation of an administrative regulation or rule, a two-fold inquiry is required:

First, it is necessary to ascertain whether the statute under which the rule was promulgated properly permits the implication of a private right of action. To this determination, the method of analysis developed by the Supreme Court is fully applicable. If under *Cort v. Ash,* [422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)], and its progeny, a court finds that Congress did not intend the statute to be enforced by private actions, then the inquiry is concluded. No private right of action may be implied in such a situation....

If the enabling statute permits a private right of action, a second inquiry must then be made: whether a private

---

4. Following is a list by section number and C.F.R. edition of the regulations cited to the court by the plaintiffs, with a very general outline of content and bracketed notation of location in the 1986 edition of the C.F.R.:

**7 C.F.R. Part 1924 (1980 & revisions)** [same location (1986); but .55 reserved] Subpart B—Management Assistance to Individual Borrowers and Applicants

| § 1924.51 | general |
| .52 | reserved |
| .53 | reserved |
| .54 | reserved |
| .55 | management assistance |
| .56 | credit counseling |
| .57 | planning |
| .58 | recordkeeping |
| .59 | supervision |
| .60 | analysis |

**7 C.F.R. Part 1941 (1980)** [same location 1986; but see below § 1941.18(c)(1)–(3)]—Subpart A—Operating Loan Policies, Procedures, and Authorizations

| § 1941.16(a)–(d) | loan purposes |
| § 1941.18(b)(2) and (b)(4) | terms |
| § 1941.18(c)(1)–(3) | consolidation rescheduling and deferral [1985 and after reader directed to Part 1951, Subpart A] |

No explanation is given by the plaintiffs for their citation to regulations in Part 1941, which deals with Operating Loans and not Emergency Loans.

**7 C.F.R. Part 1951 (1980)** [same location 1986; but content change]
Subpart A—Account Servicing Policies
§ 1951.33(a)–(e) Deferral, consolidation and rescheduling of OL, and EM and EE loans made for Subtitle B purposes.
§ 1951.40(1) [sic. (a)] and (2) [sic. (b)] Deferment and reamortization of FO, SW, RL, EE or EM loans made for real estate purposes.
No explanation is given as to why 1951.40(1) and (2) are relied upon. It does not appear to the court that the plaintiffs received their Emergency Loans for "real estate purposes."
**7 C.F.R. Part 1960 (1981–1985)** [see below for location parallel 1986 version]
[The plaintiffs in their amended complaint cited 7 C.F.R. § 1961.1–.5; § 1961.12; § 1961.13 established 1975 via 40 Federal Register 59194. No Part 1961 was found in the 1979–1986 editions of the C.F.R. However, a reading of their complaint indicates that the plaintiffs, more likely than not, relied upon: 7 C.F.R. Part 1960 (1981–85), Subpart A—Special Servicing of Delinquent and Problem Case FmHA Farm Borrowers.]

| § 1960.1 | Introduction |
| .2 | Definitions |
| .3 | Purpose |
| .4 | Period for initiating the annual review of delinquent and other problem cases |
| .5 | Conducting the annual review |
| § 1960.12 | Supervision and Servicing by the County Supervisor |
| § 1960.13 | Follow up serving actions by District Directors and State Office Staff |

right of action should be implied from the agency rule at issue.... At this stage it is necessary to determine: (1) whether the agency rule is properly within the scope of the enabling statute, and (2) whether implying a private right of action will further the purpose of the enabling statute.

... Every rule that is promulgated under a statute providing for a private right of action will not automatically create such a right; the two-stage inquiry must be undertaken. [Citations and footnotes omitted.]

*Angelastro v. Prudential-Bache Securities, Inc.,* 764 F.2d 939, 947 (3d Cir.) *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

The plaintiffs do not identify or discuss the enabling statute(s) pursuant to which the regulations they rely upon were promulgated. The court has, however, independently traced the specific regulatory citations given by the plaintiffs from the current 1986 edition of the C.F.R., backwards, through the 1978 edition of the C.F.R. The 1978–1986 versions of the regulations relied upon by the plaintiffs were promulgated pursuant to 7 U.S.C. § 1989 and 5 U.S.C. § 301. *See* "Authority" paragraphs at the beginning of each "Subpart" in which regulations relied upon are found.[5]

7 U.S.C. § 1989 (1982) provides:

The Secretary is authorized to make such rules and regulations, prescribe the terms and conditions for making or insuring loans, security instruments and agreements, except as otherwise specified herein, and make such delegations of authority as he deems necessary to carry out this chapter.

5 U.S.C. § 301 (1982) provides:

The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

Both statutes are general enabling statutes, permitting the promulgation of administrative regulations. No private right of action for damages may be implied from regulations promulgated pursuant to such general statutes. Since neither of the enabling statutes permits the implication of a private right of action for damages, "the inquiry is concluded," and the claims for damages based upon the violation of regulations promulgated pursuant to these enabling statutes should be dismissed. *Angelastro v. Prudential-Bache Securities, Inc.,* 764 F.2d at 947.

### Damages Claims Based on "Good Samaritan" Doctrine

The plaintiffs also maintain that the regulations they rely upon require the government to provide farmers who apply for and obtain FmHA loans with advice, credit counseling, planning assistance, recordkeeping help, supervision, operations analysis, special servicing in delinquent or problem cases, and debt adjustment relief through rescheduling, consolidation, deferment, reamortization, deferral or moratoria; and that the government failed to provide them with such services. Consequently, the plaintiffs assert they may maintain an action for damages against the defendants under the so called "good samaritan" doctrine.

The "good samaritan" doctrine is a rule of tort law. The Supreme Court of Michigan's statement of the rule is as follows:

The parallel sections in the current 1986 version are found in 7 C.F.R. § 1924.71–.73.

5. For some of the editions of the C.F.R., for example the 1978–1985 editions of regulations in Part 1924, the "Authority" paragraph included additional citations to 42 U.S.C. § 1480, which deals with administrative powers under the "Farm Housing" subchapter of Title 42, and/or 42 U.S.C. § 2942 (repealed 1981), which dealt with administrative powers under the Economic Opportunity subchapter of Title 42; neither of which appear to be relevant to this adversary proceeding. Additionally, the 1980–1985 editions of regulations in Part 1960 (deleted 1986) cited as "Authority", 7 U.S.C. § 1980. However, the United States Code for those years, 1980–1985, did not contain a 7 U.S.C. § 1980.

The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty an action lies.

*Hart v. Ludwig,* 347 Mich. 559, 564, 79 N.W.2d 895 (1956), (quoting, 38 American Jurisprudence, Negligence, § 17). The complaint fails to set forth a cause of action under the "good samaritan" doctrine. To prevail in a good samaritan action, the plaintiff must establish that the defendant undertook to act and did so negligently. *Id.* The plaintiffs do not allege that the individuals or the government undertook to render services to them and performed those services negligently. The plaintiffs merely allege that the government failed to provide services which they should have provided. The plaintiffs have thus failed to allege a fundamental element of a "good samaritan" action. Accordingly, the claim for damages based upon the "good samaritan" doctrine should be dismissed as to all defendants.

### Damages Claimed for Breach of Contract

 The plaintiffs' claim for breach of contract is based upon provisions which appear in five promissory notes, three real estate mortgages, and one security agreement that the plaintiffs executed to obtain the government loans.[6] The government asserts that the complaint fails to set forth a cause of action for breach of contract. The promissory notes each contain a provision similar to the following, which is found in the note dated April 10, 1978, that evidence a debt of $31,000:

> This note evidences a loan to Borrower made or insured by the Government pursuant to subtitle B or C of the Consolidated Farm and Rural Development Act. This note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Paragraph 21 of the real estate mortgages provides that: "This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof." Section IV, E of the Security Agreement provides that: "This Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions hereof." The plaintiffs maintain that by virtue of these provisions, the regulations upon which they rely were incorporated into the notes, mortgages and security agreement; that the government and the individual defendants failed to provide the plaintiffs with the assistance required by the regulations; and, that the failures to provide these contract services constitute a breach of contract and resulted in damage to the plaintiffs, including loss of income and credit standing, mental distress, an inability to pay other creditors, forced liquidation by a creditor other than the government, and the need to file the Chapter 11 bankruptcy case.

Clearly, there is no basis for a breach of contract action against the individual defendants. They were not parties to the notes, mortgages or the security agreement, and therefore they are not subject to personal liability on any contracts between the government and the plaintiffs. *See Belknap v. Schild,* 161 U.S. 10, 17, 16 S.Ct. 443, 445, 40 L.Ed. 599 (1896); *Kipf v. United States,* 501 F.Supp. 110, 117 (D.Mont. 1980).

The court will assume for the purpose of deciding the motion to dismiss that the regulations relied upon by the plaintiffs are incorporated into the agreements between the plaintiffs and the government. However, even with such an assumption, the complaint fails to set forth a cause of action for breach of contract. A contract is not to be construed in a vacuum. The court's primary task in construing a contract is to give effect to the parties' intention. *Central Jersey Dodge Truck Center, Inc. v. Sightseer Corp.,* 608 F.2d 1106 (6th

---

**6.** Copies of the notes, mortgages and security agreements are attached to the government's

secured claim, which was filed on November 10, 1984.

Cir.1979) (applying Michigan law). "The parties' intention in making a contract is to be ascertained by construing it in the light of circumstances existing at the time it was made, and the manifest intent must prevail over the literal sense of the terms." *Id.* at 1110. The notes, mortgages and the security agreements were executed by the plaintiffs at the behest of the government for its protection. The references to the regulations in the notes, mortgages and security agreement were obviously included to give the government the discretionary right to supervise the plaintiffs' operation to the extent necessary "to achieve the objectives of the loan and protect the interests of the United States." 7 U.S.C. § 1983(d) (1982). The right to supervise and provide assistance, without more, does not imply an obligation to supervise or assist. *See Neal v. Bergland,* 646 F.2d 1178, 1181 (6th Cir.1981), *aff'd sub nom. Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). No contractural obligations are created by the regulations relied upon. Accordingly, the breach of contract action against the individual defendants and the government should be dismissed.

**Equitable Subordination**

The plaintiffs maintain that the failure of the government to perform regulatory duties, such as supplying them with credit counseling, planning assistance, and similar services, justifies the subordination of the government's claim to the claims of all other creditors.

11 U.S.C. § 510(c) (1982) provides, in pertinent part, that:

[A]fter notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest;

11 U.S.C. § 510(c)(1). 11 U.S.C. § 510(c) codifies the law of equitable subordination embodied in cases such as *Pepper v. Lit-*

*ton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), and *Taylor v. Standard Gas & Electric Co.,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 359 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6315.

■ "Equitable subordination is a harsh remedy." *In re Featherworks Corp.,* 25 B.R. 634, 649 (Bankr.E.D.N.Y. 1982), *aff'd,* 36 B.R. 460 (E.D.N.Y.1984). It is a remedy that is not to be lightly invoked. For a claim of a creditor to be subordinated, the proponent must establish the following elements:

(i) The claimant must have engaged in some type of inequitable conduct.

(ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.

(iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 700 (5th Cir.1977) (citations omitted).[7]

■ The complaint does not contain any factual allegations which even remotely justify invoking the doctrine of equitable subordination. The plaintiffs' request for subordination is denied.

The foregoing constitutes the court's conclusions of law submitted to the United States District Court for the Eastern District of Michigan in accordance with 28 U.S.C. § 157(c)(1), and District Court Local Rule 33(a)(3)(B).

---

7. For a discussion of the doctrine of equitable subordination, *see* Herzog and Zweibel, "The Equitable Subordination of Claims in Bankruptcy," 15 *Vanderbilt L.Rev.* 83 (1961).