**In re SHELBY COUNTY HEALTH-CARE SERVICES OF AL, INC., et al., Debtors.**

**Ira D. GINGOLD, Trustee Plaintiff,**

**v.**

**UNITED STATES of America, on Behalf of the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**Bankruptcy No. 85–01572.**
**Adv. No. 86–0914A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 8, 1987.

See also 80 B.R. 563.

---

Stephen R. Beckham, Kilpatrick & Cody, Atlanta, Ga., for plaintiff.

Myles E. Eastwood, U.S. Attys. Office, Atlanta, Ga., for defendant.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Presently before the court is the motion of the United States of America, on behalf of its agency the Department of Health and Human Services, ("HHS"), to dismiss the complaint in the above-styled adversary proceeding for lack of subject matter jurisdiction. In the underlying complaint the trustee of the estates of the debtors objects to the allowance of certain claims filed by HHS. These claims are based on home healthcare provider cost reimbursement adjustments under the Medicare program. The trustee also seeks judgment against HHS for funds allegedly held and owed by HHS that are property of debtors' estates. The trustee argues that this court has jurisdiction of the entirety of this proceeding notwithstanding the involvement of Medicare reimbursement issues.

Based on an examination of the record, there does not appear to be any factual dispute. Accordingly the court makes findings of fact and conclusions as set forth hereinafter.

Each of the debtors was in the business of rendering home healthcare services. Each debtor is a wholly-owned subsidiary of Healthcare Services, Inc. ("HSI") whose sole shareholder is Joseph H. Hale. A substantial portion of debtors' revenues was derived from the Medicare program as administered by HHS through its Health Care Financing Administration ("HCFA"). *See* 42 U.S.C. Sections 1395c through i–2, 1395x(u). After entering a provider agreement with the Secretary of HHS (42 U.S.C. Sections 1395x(u), 1395cc), the provider becomes entitled to payment for the lesser of "reasonable cost" or "customary charge" for allowable services provided to Medicare beneficiaries. 42 U.S.C. Sections 1395f(b), 1395x(v). HCFA contracts with various health insurance carriers as fiscal in-

termediaries in processing and paying claims submitted by providers. 42 U.S.C. Section 1395h. Reimbursement payments are made on an interim basis throughout the fiscal year. These payments, however, are subject to adjustment by HHS for any overpayments or underpayments. 42 U.S. C. Section 1395g; 42 C.F.R. Section 405.-405, 405.454; *Neuman v. Blue Cross/Blue Shield of Greater New York (In re Neuman),* 55 B.R. 702, 706 (S.D.N.Y.1985).

The providers submit an annual cost report which the intermediary audits and reviews. 42 U.S.C. Section 1395h(a). The intermediary then issues a "Notice of Amount of Medicare Program Reimbursement" ("NPR"), stating final adjustments and Medicare reimbursement allowed and any amounts due by either the provider or HHS, with respect to the interim payments made. 42 C.F.R. Sections 405.1803, 405.-454(f)(3). Pursuant to the procedural requirements of 42 U.S.C. Section 1395oo (a), a provider may request a hearing before the Provider Reimbursement Review Board ("PRRB") for review of a determination of the amount of total program reimbursement due made by a fiscal intermediary. The decision is final unless the Secretary of HHS reviews the ruling and a provider may thereafter seek judicial review. 42 U.S.C. Section 1395oo (f)(1).

In his complaint, the trustee alleges that as a result of tax assessments and levies against Joseph Hale, Health Care International, Inc., and non-debtor corporations owned by Hale, by the United States, through its agency the Internal Revenue Service, debtors were forced to terminate their business and commence the above-styled bankruptcy cases. The previous trustee filed cost reports for the debtors asserting Medicare receivables of $1,300,-000.00 and acknowledging payables to their intermediaries of $860,000.00. The intermediaries thereafter issued NPR's disallowing debtors' costs by the sum of over $3,500,000.00. Various reasons are alleged for the disallowance and among them in particular, debtors' failure to pay certain costs within one year following the cost reporting period. The trustee asserts that such costs could not be paid as prepetition

claims except in accordance with a Chapter 7 distribution. Before and during debtors' filings of their bankruptcy petitions, interim Medicare payments were reduced to recoup overpayments as determined by debtors' intermediaries over several of the previous fiscal years.

## CONCLUSIONS OF LAW

HHS argues that this court lacks subject matter jurisdiction over the claims raised in the trustee's complaint. It contends judicial review of disputed final determinations of Medicare program reimbursement is appropriate only after the administrative appeals process established in 42 U.S.C. Section 1395oo (f) is exhausted. HHS further maintains that all of the claims set forth in the trustee's complaint are governed by jurisdictional preclusion even though they allege theories of relief other than a frontal challenge to the Medicare reimbursement determinations. *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *See also Marin v. HEW, Health Care Financing Agency,* 769 F.2d 590, 592 (9th Cir.1985). HHS contends that this jurisdictional limitation applies with equal force in the bankruptcy court as in the district court. Finally, HHS maintains that sovereign immunity prevents this court from exercising jurisdiction in this adversary proceeding until the debtors exhaust their administrative remedies. *See generally* 11 U.S.C. Section 106.

The trustee counters arguing that the underlying claims and objections both arise in and are related to debtors' cases and property of their estates under Title 11. *See* 28 U.S.C. Section 1334(a), (b), (d). The estates could gain over $1,300,000.00 for the benefit of creditors as well as the disallowance of over $2,300,000.00 in claims as a result of this proceeding. In accordance with 28 U.S.C. Section 157(b)(2)(B), the trustee argues, objections to allowance of HHS' claims constitute core proceedings which were referred to this court by the district court. Additionally, the trustee argues the affirmative claims are counterclaims by the estates against persons filing claims against the estate or seek orders to

turn over property of the estate. 28 U.S.C. Section 157(b)(2)(C) and (E).

Section 1395oo (f), the relevant Medicare provision, provides in pertinent part:

A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.

Congress has established in 42 U.S.C. Section 1395oo (f) the exclusive method of administrative and judicial review and appeal of Medicare cost reimbursement determinations and has incorporated therein the jurisdictional preclusion provision of 42 U.S.C. Section 405(h). *See* 42 U.S.C. Section 1395ii; *Daniel Freeman Memorial Hospital v. Schweiker,* 656 F.2d 473, 475–76 (9th Cir.1981); *Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123, 137–39 (9th Cir.1980). *See also V.N.A. of Greater Tift County, Inc. v. Heckler,* 711 F.2d 1020, 1024–27 (11th Cir.1983). 42 U.S.C. Section 405(h), the jurisdictional preclusion provision provides as follows:

The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

The Supreme Court addressed the effect of this provision in *Weinberger v. Salfi,*

422 U.S. at 756–57, 95 S.Ct. at 2462–63 (1975) and concluded that it is more than a mere codification of the doctrine of exhaustion of administrative remedies that a court could waive if exhaustion appeared futile. *See also Id.* at 766, 95 S.Ct. at 2467; *Mathews v. Eldridge,* 424 U.S. 319, 327–28, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). The court held that the first two sentences of Section 405(h) assure that administrative review will be required before judicial review as provided by 42 U.S.C. Section 405(g).[1] The third sentence does much more, however, because it contains an unconditional prohibition of judicial review premised on either 28 U.S.C. Sections 1331 (federal question) or 1346 (United States as defendant).

The third sentence of Section 405(h) is not the only provision for judicial review preclusion in that section. The court in *Salfi, supra,* further determined that the first two sentences, in relation to 42 U.S.C. Section 405(g) (Section 1395oo (f) herein, *see* Note 1 *infra* ), set forth a procedure for obtaining judicial review containing both waivable and nonwaivable elements. 422 U.S. at 763–74, 95 S.Ct. at 2465–66; *Mathews,* 424 U.S. at 328–32, 96 S.Ct. at 899–01; *V.N.A. of Greater Tift County,* 711 F.2d at 1025. Although the requirement of full administrative review as set forth in the statute and regulations may be waived, the other requirement of presenting a claim to the Secretary (i.e., to the PRRB) for a decision is purely jurisdictional and cannot be waived. *Id.* The court in *Salfi* reasoned that the requirement of a final decision by the Secretary is "central to the requisite grant of subject-matter jurisdiction...." 422 U.S. at 764, 95 S.Ct. at 2466. This provision goes beyond a mere application of the doctrine of exhaustion of administrative remedies.

The Ninth Circuit in *Pacific Coast Medical, supra,* analyzed this statutory scheme of review as follows:

Congress has adopted a statutory scheme which provides one route for ju-

---

**1.** In *V.N.A. of Greater Tift County, supra,* the Eleventh Circuit stated that 42 U.S.C. Section 405(g) of the Social Security Act is the functional equivalent of the Medicare Act judicial review provision of 42 U.S.C. Section 1395oo (f). 711 F.2d at 1025 n. 7.

dicial review, exclusive of all others. It has determined that the Secretary and his delegated review procedure should have the opportunity to fully consider any Medicare benefit claims before they are submitted to a federal court. For the Medicare provider reimbursement claims, the designated avenue to judicial review is prescribed by 42 U.S.C. Section 1395*oo* and requires appeal to the PRRB, with the Secretary having the opportunity to review the Board's decision prior to court action. The application of this requirement is not discretionary with the District Court-adherence to the procedures of 42 U.S.C. Section 1395*oo* is a prerequisite to the Court's very jurisdiction. Even though the District Court may perceive equities in favor of hearing claims immediately, perhaps even the appearance of futility in forcing a party to pursue the statutory procedure, the District Court is utterly without power to entertain those claims.

633 F.2d at 138 (footnote omitted).

The case law of the Eleventh Circuit in interpreting Section 405(h) consistently reveals that the section is designed to preclude federal question jurisdiction under 28 U.S.C. Section 1331.[2] As the court stated in *V.N.A. of Greater Tift County, supra:*

> In *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d 328, 331–32 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978) —a challenge to a regulation, and the Secretary's interpretation of it, governing method for determining cost—the court held that the rationale of *Salfi* 'precludes all review of the Secretary's decisions by federal district courts brought under Section 1331.'

711 F.2d at 1026. (footnote omitted). *See also United States v. Sanet,* 666 F.2d 1370, 1373 (11th Cir.1982); *Bussey v. Harris,* 611 F.2d 1001, 1004 (5th Cir.1980); *Pushkin v. Califano,* 600 F.2d 486, 489 (5th Cir.1979); *American Association of Councils of Medical Staffs v. Califano,* 575 F.2d 1367,

1370–71 (5th Cir.1978). These cases as well as the language of Section 405(h) itself make it clear that the preclusion of judicial review applies to the district court's Section 1331 federal question jurisdiction (and to jurisdiction under 28 U.S.C. Section 1346). Thus the cases are clear that this jurisdiction preclusion applies in nonbankruptcy judicial review of Medicare cost reimbursement determinations.

■ The question here is whether this jurisdictional preclusion also applies in bankruptcy. HHS contends that it does but the trustee disputes this contention. This court derives its jurisdiction from 28 U.S.C. Section 1334, a source that is different from that which governs judicial review of Medicare cost reimbursement determinations. Further, this court's jurisdiction has not been invoked in judicial review as contemplated in the Medicare statute at 42 U.S.C. Section 1395*oo* (f)(1) or at Section 405(h). Rather, this court's jurisdiction has been invoked in the administration of a bankruptcy case. In this area Congress has granted the federal district courts original and exclusive jurisdiction, pursuant to Section 1334, over a debtor, all assets and liabilities. This jurisdiction is independent of the type of judicial review contemplated in Section 1395*oo* (f)(1) and Section 405(h). Thus the exclusive and original jurisdictional grant in bankruptcy cases facilitates the administration, collection, liquidation, and distribution of assets and the determination of liabilities of a debtor's estate.

The underlying basis of the instant adversary proceeding is an objection for disallowance of claims against debtors' estates under 11 U.S.C. Section 502(a) and claims and counterclaims to HHS claims seeking turnover of property of the estate under 11 U.S.C. Section 542. The district court in bankruptcy cases is granted original and exclusive jurisdiction of a debtor's property as of the commencement of a case, of claims against the estate and of the underlying civil proceeding pursuant to 28 U.S.C.

**2.** Some of these cases are Fifth Circuit decisions rendered prior to October 1, 1981. Pursuant to *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

Section 1334(a), (b) and (d). In accordance with 28 U.S.C. Section 157(a) and (b)(2)(B), (C) and (E), these matters can and have been referred by the district court to this bankruptcy court. *See In re Jurisdiction of the United States Bankruptcy Court, Northern District of Georgia* (N.D.Ga. July 12, 1984).

By definition "core" proceedings include, but are not limited to, allowance or disallowance of claims, counterclaims by the estate against persons filing claims against the estate, turnover of property of the estate and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. Accordingly, the court concludes that these are core proceedings determinable by this court pursuant to the district court's reference.

Jurisdiction is not premised on the judicial review provisions under Section 1395oo (f)(1) and Section 405(h). Instead, as noted, the bankruptcy court derives its jurisdiction from 28 U.S.C. Section 1334, a source totally independent of and not contemplated by Section 1395oo (f)(1) and Section 405(h). Accordingly, this court does have subject matter jurisdiction to hear and to finally resolve issues of allowance or disallowance of HHS' claims and for turnover of property as alleged here.

■ In the instant case we have two statutes which appear on their face to apply and control the issue of jurisdiction. In construing a statute, the court's first duty is to give effect to the intent of Congress. *United States v. Second National Bank of North Miami,* 502 F.2d 535, 539 (5th Cir. 1974), *cert. denied,* 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975). Where two statutes deal with the same subject matter and conflict, they are to be harmonized where possible to preserve their basic sense and purpose. *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed. 2d 80 (1981); *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).

In the nonbankruptcy setting, Congress, by enactment of 42 U.S.C. Section 1395oo and the incorporation of 42 U.S.C. Section 405(h), has established the exclusive method of administrative and judicial review and appeal of Medicare cost reimbursement determinations. The Medicare provision does not address bankruptcy jurisdiction. Yet, in bankruptcy, Congress has vested original and exclusive jurisdiction of a debtor, the estate, all assets and all liabilities in the district courts, or by reference in the bankruptcy court.

As noted in *Davis v. United States,* 716 F.2d 418, 428 (7th Cir.1983), a later enacted statute may limit the scope of an earlier statute. *See also In re Johnson,* 787 F.2d 1179, 1182 (7th Cir.1986). In the instant case, the jurisdictional preclusion provision of 42 U.S.C. Section 405(h), incorporated into Medicare cost reimbursement determinations by 42 U.S.C. 1395oo, was originally enacted in 1935 (49 Stat. 624) and was amended in 1948 (62 Stat. 869). The bankruptcy jurisdiction statute, as amended, 28 U.S.C. Section 1334, took effect on July 10, 1984. (98 Stat. 333). In enacting this provision for original bankruptcy jurisdiction, Congress was presumably aware of the Medicare jurisdictional preclusion provisions. If Congress intended that a debtor exhaust his administrative remedies in bankruptcy cases like the one at bar it would have made express provision for this. *See Kenny v. Block (In re Kenny),* 75 B.R. 515, 16 B.C.D. 31, 34–35 (Bankr.E. D.Mich.1987). Thus, Section 1334 is the later enacted of the two statutes in question and controls the determination of this court's jurisdiction.

The trustee has objected to certain claims filed by HHS and by claims and counterclaims to the HHS claims seeks turnover of property alleged to be property of the estate. *See* 28 U.S.C. Section 157(b)(2)(C) and (E). *See also Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed. 2d 391 (1966). This court recognizes that the underlying basis of the trustee's claims and counterclaims arise under the Medicare Act to the extent that the trustee challenges the reimbursement entitlement decisions made by the fiscal intermediary. *See generally Marin v. HEW, Health Care Financing Agency,* 769 F.2d at 592; *V.N.*

*A. of Greater Tift County,* 711 F.2d at 1025. As previously noted, however, this court has core matter jurisdiction to finally determine issues of allowance or disallowance of claims against the estate. Accordingly the district and bankruptcy court's jurisdiction in bankruptcy cases of these core matters is not grounded on 42 U.S.C. Section 1395*oo* (f)(1). HHS cites the decision of *Andrews v. Blue Cross and Blue Shield of Michigan (In re Clawson Medical, Rehabilitation and Pain Care Center, P.C.),* 12 B.R. 647 (E.D.Mich.1981), for the proposition that a bankruptcy court has no jurisdiction to review a Medicare claim until administrative remedies are exhausted. This court concludes, however, that no undue invasion of the established procedures for provider reimbursement review by HHS has occurred because 28 U.S.C. Section 1334 provides a separate and independent basis for original jurisdiction in bankruptcy cases in the district court, and by reference the bankruptcy court.

Finally, the United States contends that sovereign immunity prevents this court from asserting jurisdiction with regard to the Medicare cost reimbursement issues. The United States also argues in this regard that unless administrative remedies are exhausted, the Medicare Act's waiver of sovereign immunity with regard to reimbursement claims is not applicable. However, in ruling on a similar argument regarding claims arising under the Federal Tort Claims Act ("FTCA"), the bankruptcy court in *Kenny v. Block (In re Kenny),* 75 B.R. 515, 16 B.C.D. 31, 34–35 (Bankr.E.D. Mich.1987), held that even if the requirement of the FTCA regarding exhaustion of administrative remedies would prevent the action, the waiver of sovereign immunity found in 11 U.S.C. Section 106 is "separate and distinct" from the waiver found in the FTCA. That court went on to emphasize that Section 106 of the Bankruptcy Code does not require exhaustion of administrative remedies. The same principle similarly applies in the case at bar. This court thus finds that 11 U.S.C. Section 106 effects a waiver of sovereign immunity.

■ First, the trustee's counterclaims to the United States' proofs of claims are claims arising out of the same transactions or occurrences as the claims asserted in those proofs of claim. Consequently, the United States has waived its sovereign immunity in regard to those counterclaims. As Section 106(a) provides:

> A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

Next, sovereign immunity does not bar the trustee's objections to the proofs of claim filed by the United States. *See* 11 U.S.C. Section 106(b) and (c). Finally, Section 106(c) waives sovereign immunity with regard to the remaining claims asserted by the trustee on behalf of the estates against which the United States has not filed proofs of claims. As that section states:

> Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
>
> (1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and
>
> (2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. Section 106(c). In the complaint, the trustee's claims against these remaining estates seek the turnover of property that is alleged to be estate property under 11 U.S.C. Section 542. That section requires turnover of property to the estate by an *entity.* 11 U.S.C. Section 542(a). Consequently, the United States is an entity for purposes of Section 106(c) and is subject to the jurisdiction of this court with respect to the trustee's complaint seeking turnover notwithstanding any assertion of sovereign immunity. 11 U.S.C. Section 106(c). Accordingly, this court determines that sovereign immunity does not prevent this court from exercising subject matter jurisdiction with regard to these Medicare reimbursement issues.

Having concluded that this court has subject matter jurisdiction in this proceeding, an issue remains as to whether this court, in its discretion, should retain jurisdiction and reach the merits of the Medicare reimbursement issues at this particular time. The court now considers the applicability of the doctrine of primary jurisdiction to this case.[3]

■ The primary jurisdiction doctrine emphasizes the promotion of proper relationships between the courts and administrative agencies responsible for certain regulatory duties. The Supreme Court in *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) explained the doctrine as follows:

'Primary jurisdiction' ... applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

352 U.S. at 63–64, 77 S.Ct. at 165. *See also Far East Conference v. United States,* 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). Under the primary jurisdiction doctrine, a court does not surrender jurisdiction of the case; instead, the court postpones exercise of jurisdiction pending a decision thereon by an administrative agency.

■ In determining whether to apply the doctrine courts consider the reasons for primary jurisdiction and whether the purposes it serves will be enhanced by applying it to the particular case. Such determination must of necessity be made on a case by case basis in order to facilitate the congressional policy of economy of administration without undue delay in bankruptcy matters. *See Western Pacific Railroad Co.,* 352 U.S. at 64–65, 77 S.Ct. at 165; *In re Townview Nursing Home, supra,* at 441. One of the reasons often stated for invocation of primary jurisdiction is the "desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions." *Western Pacific Railroad Co.,* 352 U.S. at 64, 77 S.Ct. at 165. In addition to this, the expertise and specialized knowledge of the administrative agencies have been important factors in invoking the primary jurisdiction doctrine.

Because of the involvement of the Medicare reimbursement issues, the specialized knowledge, experience, and expertise of HHS and the need for uniformity in Medicare matters, this court is of the opinion that this is an appropriate case for application of the doctrine of primary jurisdiction.

## CONCLUSION

Based upon the foregoing findings and conclusions, this court concludes that it has original subject matter jurisdiction of the trustee's objections and claims and counterclaims for turnover, including the Medicare reimbursement issues, under 28 U.S.C. Section 1334. No undue invasion of the established procedures for provider reimbursement review by HHS occurs by this court's exercise of its original and exclusive jurisdiction granted in 28 U.S.C. Section 1334, and referred to the bankruptcy court pursuant to 28 U.S.C. Section 157. The motion of HHS to dismiss the complaint is DENIED.

Notwithstanding this original subject matter jurisdiction, the court concludes that in this case application of the primary jurisdiction doctrine is appropriate. The court is satisfied that the Medicare matters can be determined by HHS without either undue delay or impact upon the administration of this bankruptcy case. Accordingly, the court invokes the doctrine of primary jurisdiction and hereby suspends and postpones its exercise of its jurisdiction pending a determination by HHS regarding the Medicare provider reimbursement issues.

IT IS SO ORDERED.

---

**3.** This court raises the issue of primary jurisdiction, *sua sponte. See Townview Nursing Home* *v. New York (In re Townview Nursing Home),* 28 B.R. 431, 440 (Bankr.S.D.N.Y.1983).