935 F.2d 270
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re the MACLEOD COMPANY, INC., Debtor.
UNITED STATES of America, Plaintiff-Appellant,
v.
The MACLEOD COMPANY, INC., Defendant-Appellee.
 No. 90-3019.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1991.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and WISEMAN, Chief District Judge.
 PER CURIAM.
 
 
 1
 In this bankruptcy case, plaintiff United States of America appeals the district court's order affirming a bankruptcy court judgment in favor of defendant MacLeod Company ("MacLeod"). The bankruptcy court found that it had subject matter jurisdiction to hear the counterclaim brought by MacLeod. For the following reasons, we affirm.
 
 I.
 
 2
 This case arose out of a contract dispute between the Defense Construction Supply Center ("DCSC"), an agency of the United States, and MacLeod. DCSC awarded a contract to MacLeod on May 9, 1983 to construct and deliver thirteen water tank trucks to be used by the United States Air Force. MacLeod received $525,750 in progress payments from the government but failed to deliver the trucks as originally scheduled. After those delays in production and upon learning that MacLeod would declare bankruptcy, the United States terminated the contract for default on September 21, 1984.
 
 
 3
 MacLeod did not challenge that action but instead filed a petition on September 28, 1984 for reorganization under Chapter 11 of the Bankruptcy Code ("Code"), 11 U.S.C. Secs. 1101-1174, in the United States Bankruptcy Court for the Southern District of Ohio. At that point, DCSC and debtor MacLeod were at an impasse. DCSC refused to pay MacLeod for the trucks before delivery and MacLeod refused to deliver until final payment was received.
 
 
 4
 On February 4, 1985, the United States filed a Motion for Summary Judgment in the bankruptcy action seeking release of the trucks in an adversary proceeding. MacLeod counterclaimed for the balance of the unpaid contract, $57,000. The bankruptcy court granted summary judgment for the United States on January 14, 1986.
 
 
 5
 Following its successful summary judgment motion, the United States moved to dismiss the counterclaim. The United States challenged the subject matter jurisdiction of the bankruptcy court to entertain the counterclaim arguing that MacLeod had failed to satisfy the requirements of the Contract Disputes Act ("CDA"), Pub.L. No. 95-563, 92 Stat. 2383 (1978), (codified at 41 U.S.C. Secs. 601-613 (1987)), prior to the exercise of bankruptcy court jurisdiction. Both the parties agree that these CDA procedural provisions are applicable to the parties' contract and that MacLeod failed to comply with the provisions. But the debtor argues that the bankruptcy court has jurisdiction to consider the counterclaim in an adversary proceeding where the counterclaim is compulsory.
 
 
 6
 On November 19, 1986, the bankruptcy court found that despite the government's interpretation of the Contract Disputes Act, it had jurisdiction and denied the United States' Motion to Dismiss. In re The MacLeod Co., 67 B.R. 134 (Bankr.S.D.Ohio 1986). Subsequently, the bankruptcy court denied a Motion for Reconsideration on this question. A Motion for Leave to File an Interlocutory Appeal by the United States on the jurisdictional question also was rejected by the United States District Court for the Southern District of Ohio.
 
 
 7
 Following those appeals, the bankruptcy court conducted a trial on August 23 and 24, 1988 on MacLeod's counterclaim. The bankruptcy court found for MacLeod and awarded $51,664 in damages and storage fees. On appeal, the United States District Court for the Southern District of Ohio affirmed the bankruptcy court's decision on Oct. 27, 1989.
 
 
 8
 The first question before this court is whether the bankruptcy court has jurisdiction to hear MacLeod's counterclaim given MacLeod's failure to comply with the Contract Dispute Act. If we conclude that subject matter jurisdiction exists, then we must decide whether the bankruptcy court abused its discretion by deciding to hear MacLeod's counterclaim. We review the legal conclusions of the district court de novo to determine whether it erred as a matter of law on this question. In re Bell & Beckwith, 838 F.2d 844, 848 (6th Cir.1988).
 
 II.
 
 9
 In this case we are presented with a conflict between provisions of two divergent Acts of Congress: the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (1984), and the Contract Disputes Act. See, e.g., In re Gary Aircraft Corp., 698 F.2d 775, 780 (5th Cir.) (when confronted with conflicting mandates between the Bankruptcy Code and the pre-CDA procedures "what is a poor circuit judge to do?"), cert. denied, 464 U.S. 820 (1983). MacLeod and the United States disagree about whether satisfaction of the CDA's procedural requirements is necessary for the bankruptcy court to obtain jurisdiction over the debtor's contract counterclaim. When it comes to such conflicts, "[t]he courts have not been unanimous regarding the effect on bankruptcy court jurisdiction of statutory restrictions on judicial review." In re Town & Country Home Nursing Services, Inc., 112 B.R. 329, 334 (Bankr. 9th Cir.1990). The question presents a case of first impression in this circuit.
 
 A. The Contract Disputes Act
 
 10
 The United States contends that the requirements of the CDA are jurisdictional prerequisites that must be met before any other court, including a bankruptcy court, can exercise jurisdiction over a CDA-based claim.
 
 
 11
 The CDA was designed to encourage negotiated resolutions to all contract disputes. The Act's legislative history indicates that it was designed to "induce resolution of more contract disputes" with the government by negotiation rather than litigation and provide alternative forums for dispute resolution. See S.Rep. No. 1118, 95th Cong., 2d Sess. 1 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5235. See generally Paragon Energy Corporation v. United States, 645 F.2d 966, 967-73 (Ct.Cl.1981) (where the court discusses the pre-CDA contracting scheme and legislative history).
 
 
 12
 Under the Act, any contract for the procurement of services entered into by an executive agency is subject to an administrative procedure for dispute resolution. 41 U.S.C. Sec. 602(a). The CDA requires that a government contractor must meet two procedural hurdles before a court can exercise jurisdiction. First, it requires that a government contractor initially submit its contractual claim against the government to the contracting officer for a decision. 41 U.S.C. Sec. 605(a). Where, as in this case, the contractual claim exceeds $50,000, the contractor also must "certify" to the contracting officer that the claim is accurate and made in good faith. 41 U.S.C. Sec. 605(c)(1). If the contracting officer's decision is disputed it may be appealed to the Armed Services Board of Contract Appeals ("ASBCA") or to the United States Claims Court. 41 U.S.C. Secs. 606, 609(a)(1). Pending a final decision, a contractor has no appealable claim to either forum.
 
 
 13
 Case law interpreting the CDA reveals that courts consistently have found that lacking a final decision from a contracting officer, an appeals court does not have subject matter jurisdiction. See, e.g., Skelly & Loy v. United States, 685 F.2d 414, 419 (Ct.Cl.1982) (any CDA proceedings on uncertified claims are of no legal significance); Paragon Energy Corp., 645 F.2d at 967, 975; Great Lakes Educational Consultants v. Federal Emergency Management Agency, 582 F.Supp. 193, 195 (W.D.Mich.1984).
 
 B. The Bankruptcy Code
 
 14
 Bankruptcy jurisdiction is determined by 28 U.S.C. Sec. 1334 and 28 U.S.C. Sec. 157--entirely different jurisdictional sources than the CDA.[1] Neither contains any explicit administrative exhaustion requirement. Section 1334(a) provides the districts courts with original and exclusive jurisdiction of all cases under title 11. Unlike Sec. 1334(a) relating to bankruptcy "cases," Sec. 1334(b) jurisdiction is not exclusive. It grants "original but not exclusive jurisdiction" over all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. Sec. 1334(b). That jurisdictional grant supersedes any prior legislation that "confers exclusive jurisdiction on a court or courts other than the district courts." 28 U.S.C. Sec. 1334(b).
 
 
 15
 28 U.S.C. Sec. 157 further elaborates on the nature of a bankruptcy court's jurisdictional power. Section 157(b) provides in pertinent part:
 
 
 16
 Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
 
 
 17
 (2) Core proceedings include, but are not limited to--....
 
 
 18
 (C) counterclaims by the estate against persons filing claims against the estate; ...
 
 
 19
 As was done in this case, the district court may refer bankruptcy proceedings to the bankruptcy court for the district. 28 U.S.C. Sec. 157(a).
 
 
 20
 At the outset we must consider whether the MacLeod counterclaim is compulsory within the meaning of Fed.R.Civ.P. 13(a). Rule 13(a) provides that a claim is a compulsory counterclaim "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." We have fashioned a four part test to determine whether a counterclaim is compulsory. The following factors should be considered:
 
 
 21
 1) Is there a logical relationship between the two claims?
 
 
 22
 2) Are the issues of fact and law raised by the claim and counterclaim largely the same?
 
 
 23
 3) Would res judicata bar a subsequent suit on the counterclaim if the court were not to take jurisdiction?
 
 
 24
 4) Would substantially the same evidence support or refute both the claim and the counterclaim?
 
 
 25
 Ashbrook v. Block, No. 89-1443, slip op. at 10 (6th Cir. Oct. 25, 1990) (quoting Maddox v. Kentucky Finance Co., Inc., 736 F.2d 380, 382 (6th Cir.1984)).
 
 
 26
 Pursuant to this analysis, MacLeod's counterclaim bears a "logical relationship" to the opposing party's claim. The actions of both the government and MacLeod are grounded on the contract specifying construction of the trucks. The bankruptcy court found that the debtor's claim "for payment pursuant to the contract under which it built the subject trucks arises out of the same transaction upon which the complaint is grounded, for in the complaint plaintiff seeks delivery of the very trucks built pursuant to said Contract." Macleod, 67 B.R. at 136. The interests of judicial economy and efficiency are served by hearing these two claims together. As did the bankruptcy court, we conclude that MacLeod's counterclaim is compulsory under Rule 13(a) and that the claim is a "core proceeding" under 28 U.S.C. Sec. 157.
 
 C. Reconciling the Code and the Act
 
 27
 In this case, both statutes appear to provide exclusive jurisdiction. "Where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed intention to the contrary, to regard each as effective." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018 (1984). We find that the statutes can be reconciled and that, as a result, the bankruptcy court may assume jurisdiction over MacLeod's counterclaim. We reach this conclusion based on statutory construction, an analysis of the intent behind the Code's jurisdictional grant and federal precedent.
 
 
 28
 Since the Bankruptcy Code does not specifically mention administrative exhaustion, we are guided by several tenets of statutory construction. First, a later enacted statute may limit the scope of an earlier statute, if the two laws conflict. 2A Sutherland, Statutory Construction Sec. 51.03 (4th ed. 1984); Davis v. United States, 716 F.2d 418, 428 (7th Cir.1983). Second, where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment. Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976); Brown v. General Services Administration, 425 U.S. 820, 834 (1976) ("a precisely drawn, detailed statute pre-empts more general remedies"). These tenets are examined in turn below.
 
 
 29
 With respect to the former canon of statutory construction, it suggests that the Code should be given precedence since it was passed after the CDA. The CDA was enacted on November 1, 1978. The bankruptcy jurisdiction statute, as amended, 28 U.S.C. Sec. 1334 took effect on July 10, 1984. The former, identical provision, 28 U.S.C. Sec. 1471, was enacted November 6, 1978. If Congress had desired that any debtor exhaust administrative remedies in bankruptcy cases such as this one it would have made an express provision to do so. See, e.g., In re Shelby County Healthcare Services of Al., Inc., 80 B.R. 555, 560 (Bankr.N.D.Ga.1987); In re Kenny, 75 B.R. 515, 521 (Bankr.E.D.Mich.1987).[2]
 
 
 30
 Since repeals by implication are disfavored, Tennessee Valley Authority v. Hill, 437 U.S. 153, 189-90 (1978), we also must examine legislative intent behind the Code for an indication that Congress intended to exempt MacLeod's counterclaim from the CDA's exhaustion requirements. "Where ... resolution of a question of federal law turns on a statute and the intention of Congress, [the federal courts] look first to the statutory language and then to the legislative history if the statutory language is unclear." United States v. Brown, 915 F.2d 219, 223 (6th Cir.1990) (quoting Blum v. Stenson, 465 U.S. 886, 896 (1984)). Since the 1984 Amendments were not accompanied by an omnibus congressional report, we must examine the legislative history of the Bankruptcy Reform Act of 1978.
 
 
 31
 In crafting 28 U.S.C. Sec. 1334(b), Congress intended "to bring all bankruptcy-related litigation within the umbrella of the district court, at least as an initial matter, irrespective of congressional statements to the contrary in the context of other specialized litigation." 1 Collier on Bankruptcy, p 3.01 at 3-22 (L. King, 15th ed. 1990). Section 1334 empowered bankruptcy courts with expanded jurisdiction from the previous bankruptcy laws. See generally Zimmerman v. Continental Airlines, 712 F.2d 55, 58-59 (3rd Cir.1983), cert. denied, 464 U.S. 1038 (1984). The Senate Report on the Bankruptcy Reform Act sheds light on the rationale behind the change in jurisdiction: "A major impetus underlying this reform legislation has been the need to enlarge the jurisdiction of the bankruptcy court in order to eliminate the serious delays, expense and duplications associated with the current dichotomy between summary and plenary jurisdiction...." S.Rep. No. 95-989, 95 Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5803. The House Report reached a similar conclusion. It found that as a result of the expansion in jurisdiction "all matters and proceedings that arose in connection with bankruptcy cases" may now be tried in one action before the bankruptcy court. H.Rep. No. 95-595, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6010.
 
 
 32
 Congress intended these broad statutory provisions to override the CDA's procedural requirements due to the perceived need for virtually all bankruptcy-related proceedings to be handled inexpensively and expeditiously in but one forum. Lacking this protection, Chapter 11 reorganizations would be at the mercy of lengthy administrative proceedings. The Third Circuit considered and rejected such a possibility in In re Remington Rand Corp., 836 F.2d 825 (3rd Cir.1988). "Applying the [Contract Disputes] Act without regard to these facts [i.e. the broad Bankruptcy Code definition of a claim] would require us to treat government claims differently from all other Code claims, and also would allow the government to control the time of when its bankruptcy claims arise. We find no indication that Congress intended this anomalous result." Id. at 826-27.
 
 
 33
 Moreover, we have held that 11 U.S.C. Sec. 106(a) does not contain an administrative exhaustion requirement. Ashbrook v. Block, No. 89-1443, slip op. at 9 (6th Cir. Oct. 25, 1990). 11 U.S.C. Sec. 106(a) provides that "[a] governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose." The procedural pattern of Ashbrook echoes the posture of this case. The Farmers Home Administration (FmHA) filed a proof of claim against the chapter 11 debtors who, in turn, filed a counterclaim against the United States, FmHA and other individuals. The debtors did not file any administrative claims as required by federal law.
 
 
 34
 In Ashbrook, we focused on the conflict between 28 U.S.C. Sec. 2675(a), which provides that a claimant may not file suit under the Federal Tort Claims Act ("FTCA") unless she first files an administrative claim with the agency against which there is a grievance, and Sec. 106(a), which does not require such a filing. Like the requirements of the CDA, outside of bankruptcy court, Sec. 2675(a) has been defined as a jurisdictional requirement, not capable of waiver or subject to estoppel. Garrett v. United States, 640 F.2d 24, 26 (6th Cir.1981).
 
 
 35
 While the court in Ashbrook expressed concern that repeals by implication are not favored by courts, id. at 8, it analyzed the legislative history of Sec. 106(a) and concluded that:
 
 
 36
 The purpose of permitting a party to bring a compulsory counterclaim once the government has filed a proof of claim is to remove the perceived unfairness of allowing the government to receive a distribution from the estate without being exposed to any liability. Consistent with this purpose, the legislative history of Sec. 106(a) unequivocally conveys that the government's exposure to liability is automatic upon its filing a proof of claim. The legislative history makes no reference to administrative exhaustion in the context of a counterclaim under Sec. 106(a). We believe that the government's automatic exposure to liability once it files a proof of claim is the "limited change" which Congress intended Sec. 106(a) to effectuate.
 
 
 37
 In sum, while the CDA advances a fundamental federal concern about promoting negotiated settlements to resolve contract disputes, an analysis of the legislative history of the Code reveals that Congress placed a special emphasis on the importance of expeditious resolution of bankruptcy proceedings. Congress' intentions will be better realized by reading Sec. 1334 to impliedly modify the CDA. Zimmerman, 712 F.2d at 59.
 
 
 38
 Finally, a number of courts specifically have rejected government arguments that failure to adhere to the CDA bars the bankruptcy court from assuming jurisdiction over contract claims. See, e.g., In re Invader Corp., 71 B.R. 564, 567 (Bankr.W.D.Tex.1987) (in a dispute between the CDA and Bankruptcy Code, bankruptcy court asserted it had proper jurisdiction "to hear and decide the Navy's claim" although it had not been presented to a contracting officer for decision); In re Vogue Instruments Corp., 31 B.R. 87, 90 (Bankr.E.D.N.Y.1983) (government's motion to dismiss debtor's counterclaims for lack of jurisdiction resulting from mandatory "disputes" clause in government contracts denied because bankruptcy court held that it had jurisdiction to decide a claim against the government up to the value of the Government's claim against the bankrupt).[3]
 
 
 39
 Remington Rand Corp., 836 F.2d 825, contains a particularly noteworthy analysis of the conflict between the CDA and Code. In that case, the question was whether the government had an allowable claim against a Chapter 11 debtor when that contingent and unliquidated claim had not been certified by a federal contract officer pursuant to Sec. 605(a) of the CDA. The government argued that no claim should arise until a contracting officer first determines that a valid claim exists. The district court agreed, citing Paragon Energy for the proposition that all jurisdictional hurdles required by the CDA must be fulfilled before a claim may arise. But the Third Circuit reversed that bright line test holding that, although the government's claim was not certified pursuant to the Act, it had a right to payment before the confirmation of a Chapter 11 reorganization plan. It found that the district court "erred to the extent it relied on the Act to determine the existence of a bankruptcy claim." Id. at 831. "We recognize that a party may have a bankruptcy claim and not possess a cause of action on that claim." Id. at 832.
 
 
 40
 Other courts also have held that bankruptcy courts have jurisdiction to hear claims in the face of analogous exclusive administrative agency requirements. See, e.g., Zimmerman, 712 F.2d at 58-60 (in a conflict between United States Arbitration Act and Bankruptcy Reform Act of 1978, bankruptcy proceeding need not be stayed pending mandatory arbitration required by the Arbitration Act since Bankruptcy Act impliedly modifies the Arbitration Act); Town & Country Home Nursing Services, Inc., 112 B.R. at 334-335 (where an independent basis for bankruptcy court jurisdiction exists, a request for exhaustion of administrative remedies pursuant to the jurisdictional prerequisites of nonbankruptcy statutes--including Medicare statute, the Tucker Act, and the FTCA--is not required); In re Guild Music Corp., 100 B.R. 624, 627 (Bankr.D.R.I.1989) (following Zimmerman, holding that in matters involving core bankruptcy issues, the Code impliedly modifies the Arbitration Act); and Shelby County Healthcare Services, 80 B.R. 555, 559-61. Cf. In re Clawson Medical Rehabilitation and Pain Care Center P.C., 12 B.R. 647, 651-53 (Bankr.S.D.Fla.1981) (court does not have jurisdiction to determine a Social Security Administration claim until the Secretary has rendered a final decision).
 
 III.
 
 41
 In lieu of its jurisdictional argument, the United States maintains that the bankruptcy court abused its discretion by failing to stay its proceedings to allow MacLeod to exhaust its remedies under the Contract Dispute Act. The United States contends that the bankruptcy court should have deferred to the expertise of the appropriate procurement tribunal, pursuant to the requirements of the CDA.
 
 
 42
 One of the most widely cited cases with respect to the determination of primary jurisdiction in the arena of government contracting is In re Gary Aircraft Corp., 698 F.2d 775 (5th Cir.), cert. denied, 464 U.S. 820 (1983).[4] Although this case involved a pre-CDA contract, Judge Goldberg's painstaking analysis of the intent of the Bankruptcy Act of 1898 and federal procurement statutes is instructive.[5]
 
 
 43
 Gary Aircraft found an abuse of discretion where a bankruptcy court had refused to defer jurisdiction over the government's claim against a military contractor. The court concluded that "a rule for a deferral is appropriate.... a bankruptcy court should defer liquidation of a government contracting dispute to the Board of Contract Appeals." Id. at 784. The court based its reasoning on a multi-factored approach, including the ability of bankruptcy court to ultimately determine all claims, the exclusive jurisdiction of the Court of Claims to resolve claims against the government, the lack of undue delay in deferring to the Board of Contract Appeals, the esoteric nature of government procurement law, and the presence of specialized fora designed to resolve procurement disputes. Id. at 783-84. Accord In re American Pouch Foods, Inc., 30 B.R. 1015 (Bankr.N.D.Ill.1983) (although 28 U.S.C. Sec. 1471(b) provides bankruptcy court with jurisdiction over counterclaim arising out of title 11 reorganization, court abstains in the interest of justice), aff'd, 769 F.2d 1190 (7th Cir.1985), cert. denied, 475 U.S. 1082 (1986). See also S. Ransick, Adverse Impact of the Federal Bankruptcy Law on the Government's Rights in Relationship to the Contractor in Default, 124 Mil.L.Rev. 65, 90 (1989) (majority of courts that address this issue defer liquidation of government contract claims to more specialized forum).
 
 
 44
 But the apparent lack of discretion possessed by district court judges in such contract disputes is not as inviolable as it would seem at first glance. District and bankruptcy courts repeatedly have indicated that such discretion should be balanced by countervailing considerations, perhaps most importantly, whether the deferral may cause undue delay. Even the Gary Aircraft court noted that deferral may not cause undue delay. Gary Aircraft, 698 F.2d at 784 n. 7. See also In re Verco Industries, 27 B.R. 615, 616-17 (Bankr.9th Cir.1983) (jurisdiction deferred to ASBCA because of its expertise in handling complex contract litigation and because predicted lengthy trials would disrupt the bankruptcy court's calendar); Invader, 71 B.R. at 567 (absent showing by parties that liquidation process of ASBCA would unduly delay administration, defer to ASBCA); and In re Misener Industries, Inc., 54 B.R. 89, 90 (Bankr.M.D.Fla.1985) (absent countervailing considerations based on the facts of this case, no discretion is left to the bankruptcy court to do anything but defer to ASBCA). The Code also envisions such a possibility. 11 U.S.C. Sec. 502(c)(1) requires the estimation of any claim liquidation that would "unduly delay" the closing of the estate.
 
 
 45
 With respect to the facts of this case, we cannot find that the bankruptcy court abused its discretion by not deferring to the CDA. The scenario before us is one of the rare cases envisioned by Gary Aircraft, where jurisdiction need not be deferred. The counterclaim involved straightforward breach of contract analysis and the bankruptcy court specifically was concerned with the possibility of additional delay in resolving the contract question. In contrast with the extended Gary Aircraft trial, which took eight months for the bankruptcy court to try and where the findings of fact and conclusions of law covered 383 pages, the contract issue before this bankruptcy court was relatively simple. It only took two days for the bankruptcy judge to try this case. The counterclaim involved basic contract law and the judge ruled from the bench. As a result, the goals of the CDA have been adequately fulfilled. See, e.g., In re Amalgamated Foods, Inc., 41 B.R. 616 (Bankr.C.D.Cal.1984) (declining to follow Gary Aircraft, bankruptcy court rejected ERISA statutory arbitration procedure in favor of bankruptcy court determination since the latter method is more expeditious and achieves goals sought by ERISA arbitration).
 
 
 46
 Moreover, the bankruptcy court specifically took note of the government's dilatory conduct in this case which they filed almost six years ago. Any deferral would relegate:
 
 
 47
 this bankruptcy debtor to procedures which are certain to consume extended amounts of time. We make this statement in light of the conduct of plaintiff with regard to the time consumed in obtaining possession of the trucks, which plaintiff had sought, not to mention the undue amount of time consumed by plaintiff in making an inspection of the vehicles in the course of this adversary proceeding.
 
 
 48
 MacLeod, 67 B.R. 134 at 137. See also In re Neavear, 674 F.2d 1201 (7th Cir.1982) (in a case where debtor failed to exhaust Social Security Administration administrative remedies, debtor was not required, as a condition of obtaining relief in the bankruptcy court, to pursue lengthy and possibly groundless administrative appeals of the ALJ's recoupment decision).
 
 IV.
 
 49
 In this case, 28 U.S.C. Secs. 157 and 1334 provide the bankruptcy court with jurisdiction over the counterclaim in question. Finding that subject matter jurisdiction exists, a bankruptcy court has the discretion to hear such a counterclaim in extraordinary cases. The record provided to us reflects that this is such a case. For the foregoing reasons we affirm the judgment of the district court.
 
 
 
 [1]
 Section 1334 of title 28 provides in part:
 (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11....
 Enacted in 1984, Sec. 1334(a) and (b) are identical to superseded 28 U.S.C. Sec. 1471(a) and (b). The Bankruptcy Amendments and Federal Judgeship Act of 1984 repealed the jurisdictional provisions of the 1978 bankruptcy legislation. See generally Robinson v. Michigan, Nos. 89-2097/2098, slip op. at 8 n. 2 (6th Cir. Nov. 1, 1990).
 
 
 [2]
 The Fifth Circuit rejected Shelby's statutory interpretation of Sec. 1334(b) in MCorp Financial v. Board of Governors, 900 F.2d 852, 854-856 (5th Cir.1990). In that case, the appeals court reversed a district court opinion that had enjoined the Board of Governors of the Federal Reserve from pursuing its enforcement actions against MCorp, a Chapter 11 debtor. The court held that "[t]he legislative history [of Sec. 1334(b) ] reflects no intent that the bankruptcy court's jurisdiction supersede the exclusive jurisdiction of an administrative agency...." Id. at 855. Otherwise, the court reasoned that district court, sitting in bankruptcy, would possess equitable power withheld from every other court. Cf. Zimmerman v. Continental Airlines, 712 F.2d 55, 56 (3rd Cir.1983), cert. denied, 464 U.S. 1038 (1984). The holding in MCorp has no binding effect on this court. We have cited favorably several of the bankruptcy cases criticized in MCorp. See Ashbrook v. Block, No. 89-1443, slip op. at 9 (6th Cir. Oct. 25, 1990). Moreover, the facts of MCorp differ significantly from this case. The court in MCorp observed that the government agency had not sought control over the property of the Chapter 11 debtor, "only the opportunity to go forward in its administrative proceedings.... [which] do not directly concern the debtor's property." 900 F.2d at 856. But here the United States filed a proof of claim to obtain MacLeod's property and MacLeod filed a counterclaim to obtain the unpaid balance of its contract with the government
 
 
 [3]
 As noted in In re Town & Country Home Nursing Services, Inc., 112 B.R. 329, 334 (Bankr. 9th Cir.1990), courts have reached different conclusions about how far CDA's jurisdictional requirements reach in a bankruptcy setting. While the instant case has been pending, one district court has expressly disagreed with the bankruptcy court's jurisprudence. EG & G Washington Analytical Services Center Inc., v. Eastern Marine, Inc., No. MCA 87-50016-RV (N.D.Fla. June 1, 1987). In EG & G, the bankruptcy court stayed consideration of a counterclaim pending exhaustion of CDA remedies. See also In re Pennsylvania Peer Review Org'n, Inc., 50 B.R. 640, 646-47 (Bankr.M.D.Pa.1985). In that case, the bankruptcy court denied jurisdiction, reasoning that the plaintiffs cannot obtain from a bankruptcy court relief which is not based on any right provided in the Bankruptcy Code and which would be unavailable to them in a nonbankruptcy forum. "It is well established that the filing of a petition in bankruptcy cannot expand a debtor's rights against a creditor." Id. at 647
 
 
 [4]
 Primary jurisdiction ... applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views
 United States v. Western Pac. R.R., 352 U.S. 59, 63-64 (1956).
 
 
 [5]
 In reaching a decision, the court specifically noted that it was not deciding the issue of whether the bankruptcy court had jurisdiction over the claim. Id. at 784 n. 6. Although not examined, the court favorably cites Pepper v. Litton, 308 U.S. 295, 304 (1939) (jurisdiction of the bankruptcy court is exclusive of all other courts). Moreover, existence of subject matter jurisdiction must be assumed or there would be no discretion to exercise in deferring to the ASBCA